[Crim. No. 21674. Nov. 30, 1981.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT LEE WATSON, Defendant and Respondent.

■■■■■■■■
■■■■■■■■■■

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally, Lisa Lewis Dubois, Eddie T. Keller and Thomas R. Yanger, Deputy Attorneys General, for Plaintiff and Appellant.

Russell J. Swartz, Public Defender, Quin Denvir, State Public Defender, and Charles M. Bonneau, Deputy State Public Defender, for Defendant and Respondent.

OPINION

**RICHARDSON, J.**—Defendant was charged with both second degree murder (see Pen. Code, §§ 187-189; all further statutory references are to this code) and vehicular manslaughter (§ 192, subd. 3(a)). In this pretrial proceeding, he contends that the facts underlying the alleged offense disclose, at most, gross negligence punishable under the manslaughter statute. We have concluded, however, that the facts also support a finding of implied malice (§ 188) justifying the murder charge as well.

The circumstances of the offense, as elicited at the preliminary examination, are as follows: In the late night and early morning hours of January 2 and 3, 1979, defendant Robert Watson consumed large quantities of beer in a Redding bar. Approximately an hour and a half after leaving the bar, defendant drove through a red light on a Redding street and avoided a collision with another car only by skidding to a halt in the middle of the intersection. After this near collision, defendant drove away at high speed, approached another intersection and, although he again applied his brakes, struck a Toyota sedan. Three passengers in the Toyota were ejected from the vehicle and the driver and her six-year-old daughter were killed. Defendant left 112 feet of skid marks prior to impact, and another 180 feet of skid marks to the vehicle's point of rest.

The applicable speed limit at the accident scene was 35 miles per hour. Expert testimony based on the skid marks and other physical evi-

dence estimated defendant's speed immediately prior to applying his brakes at 84 miles per hour. At point of impact, the experts concluded that defendant's speed was approximately 70 miles per hour. Eyewitness Henke testified that defendant's car passed him "real fast" (estimated by Henke at 50 to 60 miles per hour) shortly before the collision. According to Henke, defendant swerved from the slow lane into the fast lane, suddenly braked and skidded into the intersection, and thereupon struck the other vehicle. Henke believed that the traffic light was green when defendant entered the intersection.

Defendant's blood alcohol content one-half hour after the collision was .23 percent, more than twice the percentage necessary to support a finding that he was legally intoxicated.

The complaint herein charged defendant with two counts each of second degree murder and vehicular manslaughter. At the preliminary examination, the magistrate found probable cause to charge defendant with vehicular manslaughter, but refused to hold him to answer the second degree murder counts, concluding that the facts elicited at the preliminary examination were insufficient to demonstrate the essential element of implied malice. Despite the magistrate's ruling, the People included in the information the two counts of second degree murder which were rejected by the magistrate. (See § 872.) Defendant's section 995 motion to dismiss the murder counts was granted by the superior court, and the People appeal from the order of dismissal. (§ 1238, subd. (a)(1).)

Based upon his review of the legislative history of the vehicular manslaughter statute (§ 192, subd. 3(a)), defendant claims that a murder charge is precluded. He asserts that the Legislature intended separately to classify and punish all vehicular homicide as manslaughter. We hold otherwise, concluding that nothing in the legislative history of this section suggests such an intent. Rather, we conclude that if the facts surrounding the offense support a finding of "implied malice," second degree murder may be charged; if the facts demonstrate only "gross negligence," a vehicular manslaughter charge may be sustained. Although the terms "gross negligence" and "implied malice" are similar in requiring an awareness of a risk of harm, the degrees of awareness differ. Because of that fact, the more specific vehicular manslaughter statute does not preclude application of the more general murder statute.

Finally, because the conduct of defendant in this case, reasonably viewed, exhibited wantonness and a conscious disregard for life which would support a finding of implied malice, we conclude that the order of dismissal must be reversed.

## 1. *Application of Murder Statutes to Vehicular Homicides*

Section 187, subdivision (a), provides that "Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." Under section 188, malice may be express or implied, and implied malice is present "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." Section 189 defines first degree murder as all murder committed by specified lethal means "or by any other kind of willful, deliberate, and premeditated killing," or a killing which is committed in the perpetration of enumerated felonies; all other kinds of murder are of the second degree.

Under section 192, manslaughter is "the unlawful killing of a human being, without malice." One kind of manslaughter is defined in subdivision 3 of that section: "In the driving of a vehicle—[¶] (a) In the commission of an unlawful act, not amounting to felony, with gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence."

Defendant reasons that the general murder statutes (§§ 187-189) are preempted by the more specific provisions applicable to vehicular homicides (§ 192, subd. 3(a)). In *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593], we said that: "'[W]here the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.'" (Quoting from *People* v. *Breyer* (1934) 139 Cal. App. 547, 550 [34 P.2d 1065, 1067].) Defendant observes that the murder statutes deal generally with the unlawful killing of a human being, whereas the vehicular manslaughter provision deals specifically with such killing while driving a vehicle. He therefore contends that the latter statute bars the application of the former under the *Williamson* rule.

The argument contains a flaw. We have held that the *Williamson* preemption rule is applicable (1) when each element of the general stat-

ute corresponds to an element on the face of the special statute, or (2) when it appears from the statutory context that a violation of the special ·statute will necessarily or commonly result in a violation of the general statute. (*People v. Jenkins* (1980) 28 Cal.3d 494, 502 [170 Cal.Rptr. 1, 620 P.2d 587].) Neither of these two categories applies here. A prosecution for murder under section 187 requires a finding of *malice*, while section 192 specifically defines manslaughter as a killing *without malice*. Moreover, in light of the malice requirement, a violation of the vehicular manslaughter statute would not necessarily or commonly result in a violation of the general murder statute. Thus, the *Williamson* rule is inapplicable.

Nonetheless, defendant asserts that by charging him with second degree murder based upon implied malice (§§ 187, 188), the prosecution has charged him with an unintentional killing. He argues that because vehicular manslaughter also is an unintentional killing, the two crimes are coterminous, and that the more specific statute excludes the more general one.

This argument is not persuasive. ▮ The requisite culpability for the vehicular manslaughter charged here is *gross negligence* (§ 192, subd. 3(a)), which has been defined as the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. (See *People v. Costa* (1953) 40 Cal.2d 160, 166 [252 P.2d 1].) On the other hand, *malice* may be implied when a person, knowing that his conduct endangers the life of another, nonetheless acts deliberately with conscious disregard for life. (See *People v. Sedeno* (1974) 10 Cal.3d 703, 722-723 [112 Cal.Rptr. 1, 518 P.2d 913]; *People v. Phillips* (1966) 64 Cal.2d 574, 587 [51 Cal.Rptr. 225, 414 P.2d 353].) Though these definitions bear a general similarity, they are not identical. Implied malice contemplates a subjective awareness of a higher degree of risk than does gross negligence, and involves an element of wantonness which is absent in gross negligence. (§ 188; see *Kastel v. Stieber* (1932) 215 Cal. 37, 46 [8 P.2d 474].)

Furthermore, we have applied different tests in determining the required mental states of gross negligence or malice. A finding of gross negligence is made by applying an *objective* test: if a *reasonable person* in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness. (*Weber v. Pinyan* (1937) 9 Cal.2d 226, 230-231 [70 P.2d 183, 112 A.L.R. 407].) However, a finding of implied malice depends upon a determination

that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard. (*People* v. *Phillips, supra,* 64 Cal.2d at p. 588.)

█ In the present case, the prosecution will be required to show a higher degree of culpability in support of the second degree murder charge than it will to establish vehicular manslaughter. Accordingly, because section 187 and section 192, subdivision 3(a), contemplate different kinds of culpability or criminal activity, the *Williamson* rule would not preclude a second degree murder charge.

█ Defendant alternatively argues that if the Legislature clearly intends a special statute to apply to the exclusion of a more general statute, this intent must be given effect even if application of the *Williamson* rule would render both statutes applicable. (*People* v. *Jenkins, supra,* 28 Cal.3d 494, 503-504 and fn. 9.) Defendant contends that the Legislature enacted section 192, subdivision 3, with the specific intention of requiring prosecution of *all* vehicular homicides under that statute. Our own review of the legislative history, however, leads us to a contrary conclusion. Rather, section 192, subdivision 3(a), was enacted to proscribe vehicular homicides which resulted from grossly negligent conduct, without precluding the possibility of a murder charge when the circumstances revealed more aggravated culpability.

In seeking the probable legislative intent behind section 192, subdivision 3, we examine its history. When the Penal Code was enacted in 1872, manslaughter was defined in section 192 as an unlawful killing of a human being without malice, and was characterized as being either voluntary or involuntary. A specific statute directed at vehicular homicides was enacted in 1935 as Vehicle Code section 500 (Stats. 1935, ch. 764, p. 2141). That section provided for imprisonment of one year in the county jail or three years in the state prison for deaths which occurred within one year as the proximate result of injuries caused by the *negligent* driving of a vehicle. In 1941, section 500 was amended to elevate the standard of culpable conduct to a *reckless disregard of, or wilful indifference to, the safety of others.* (Stats. 1941, ch. 279, § 1, p. 1414.) The amended statute specifically made the involuntary manslaughter statute inapplicable to vehicular homicides.

According to the People, because of the difficulty of proof, few convictions were obtained under this amended version of section 500. Accordingly, in 1943 section 500 was repealed, and section 193 of the Penal Code was amended to provide a specific penalty for involuntary

manslaughter resulting from the operation of a vehicle. (Stats. 1943, ch. 421, § 2, p. 1959.) The ordinary term of imprisonment for manslaughter was not more than 10 years in the state prison; however, amended section 193 made involuntary vehicular manslaughter punishable by imprisonment in the county jail for not more than one year or in the state prison for not more than five years.

In 1945, subdivision 3 was added to section 192 (Stats. 1945, ch. 1006, § 1, p. 1943) to provide a separate category for vehicular manslaughter in addition to the voluntary and involuntary categories. As previously noted, present section 192, subdivision 3(a), describes as vehicular homicide the commission of an unlawful act, not amounting to a felony, with gross negligence, or the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence.

In summary, the requisite mental state for prosecution varied between the different versions of the vehicular manslaughter statute: the 1935 statute required mere negligence; the 1941 version referred to a wilful indifference to, or a reckless disregard for, the safety of others (which, as the People note, required a showing that the defendant was subjectively aware of the risk involved (*People v. Young* (1942) 20 Cal.2d 832, 836-837 [129 P.2d 353])); the present statute at issue here is directed at gross negligence. We stress, however, that the crime involved in each version was *manslaughter,* an offense which consistently has been defined as the unlawful killing of a human being without malice. (§ 192.) Although the wilful indifference standard in the 1941 version entailed the same element of subjective awareness that is present in implied malice, that standard was speedily rejected by the Legislature soon after its enactment in favor of a gross negligence standard. Thus, the Legislature specifically declined to include conduct of any greater culpability than gross negligence in the present vehicular manslaughter statute. Moreover, there is no indication that the Legislature intended the conduct of the culpable party in a vehicular homicide case automatically to be characterized as gross negligence in order to bring all vehicular homicides within the scope of section 192, subdivision 3(a). Rather, when the conduct in question can be characterized as a wanton disregard for life, and the facts demonstrate a subjective awareness of the risk created, malice may be implied. (§ 188.) In such cases, a murder charge is appropriate.

There is precedent for the foregoing conclusion. In *People v. Fuller* (1978) 86 Cal.App.3d 618 [150 Cal.Rptr. 515], defendants committed

a burglary and then drove at high speeds in an attempt to elude a pursuing police officer. At one point in the chase, defendants almost collided head-on with another car while driving on the wrong side of the street. Defendants approached a downtown intersection at a speed of between 60 and 75 miles per hour, ran a red light, and struck another car killing its driver. The appellate court in *Fuller* reversed the trial court's dismissal of a murder charge (*Id.*, at p. 624.) The court held the felony-murder doctrine applicable and also stated that "[f]or the guidance of the trial court, we observe that [defendants] *may also be prosecuted for ordinary second degree murder*" based on malice which "may be implied when the defendant does an act with a high probability that it will result in death and does it with a base antisocial motive and with wanton disregard for human life." (*Id.*, at p. 628, italics added.)

Defendant incorrectly assumes that the *Fuller* court was able to reach its conclusion regarding second degree murder only because the case involved an underlying felony (burglary). (See 86 Cal.App.3d at p. 623.) On the contrary, the *Fuller* court determined that if the circumstances disclose sufficiently wanton conduct, and if the prosecution can demonstrate that such conduct reached a level of implied malice, second degree murder may be charged even in the absence of an underlying felony. We agree with this conclusion.

In *People* v. *Satchell* (1971) 6 Cal.3d 28 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383] (cited in *Fuller* at pp. 625, 628-629) we noted that an underlying felony is not required in order to charge second degree murder. We emphasized there that the unavailability of the felony-murder rule to provide the element of malice necessary to a murder conviction did not preclude a murder charge: "Under well-settled principles of criminal liability a person who kills—whether or not he is engaged in an independent felony at the time—is guilty of murder *if he acts with malice aforethought.*" (6 Cal.3d at p. 43, italics in original.) An independent felony may furnish additional evidence of malice, but it is not the *sine qua non*, a prerequisite to a finding of the implied malice necessary to support a murder charge.

### 2. *Probable Cause to Charge Second Degree Murder*

Having determined that a defendant may be charged with second degree murder upon facts which also would support a charge of vehicular manslaughter, we inquire whether the facts in the present

case imply malice and therefore justify charging the greater offense, that is, whether there was probable cause to hold defendant to answer the second degree murder charge.

■ The magistrate and superior court concluded that no probable cause existed to support a charge of second degree murder. This determination, based upon undisputed facts, constituted a legal conclusion which is subject to independent review on appeal. (*Pizano* v. *Superior Court* (1978) 21 Cal.3d 128, 133-134 [145 Cal.Rptr. 524, 577 P.2d 659]; see also *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal. Rptr. 13, 507 P.2d 621]; *People* v. *Handley* (1970) 11 Cal.App.3d 277, 281 [89 Cal.Rptr. 656]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 256, p. 4247.) In such a case, our function is to determine whether a person of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion that defendant committed the crime charged. (*Taylor* v. *Superior Court* (1970) 3 Cal. 3d 578, 582 [91 Cal.Rptr. 275, 477 P.2d 131].)

■ We have said that second degree murder based on implied malice has been committed when a person does "'"an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life"' ...." (*People* v. *Sedeno, supra*, 10 Cal.3d at p. 719, quoting from *People* v. *Phillips, supra*, 64 Cal.2d 574, 587.) Phrased in a different way, malice may be implied when defendant does an act with a high probability that it will result in death and does it with a base antisocial motive and with a wanton disregard for human life. (*People* v. *Washington* (1965) 62 Cal.2d 777, 782 [44 Cal.Rptr. 442, 402 P.2d 130].)

■ Based upon our independent review of the record, we believe that there exists a rational ground for concluding that defendant's conduct was sufficiently wanton to hold him on a second degree murder charge. The facts upon which we base this conclusion are as follows: Defendant had consumed enough alcohol to raise his blood alcohol content to a level which would support a finding that he was legally intoxicated. He had driven his car to the establishment where he had been drinking, and he must have known that he would have to drive it later. It also may be presumed that defendant was aware of the hazards of driving while intoxicated. As we stated in *Taylor* v. *Superior Court* (1979) 24 Cal.3d. 890, 897 [157 Cal.Rptr. 693, 598 P.2d 854]: "One who wilfully consumes alcoholic beverages to the point of intoxication,

knowing that he thereafter must operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a vehicle capable of great force and speed, reasonably may be held to exhibit a conscious disregard of the safety of others." Defendant drove at highly excessive speeds through city streets, an act presenting a great risk of harm or death. Defendant nearly collided with a vehicle after running a red light; he avoided the accident only by skidding to a stop. He thereafter resumed his excessive speed before colliding with the victims' car, and then belatedly again attempted to brake his car before the collision (as evidenced by the extensive skid marks before and after impact) suggesting an actual awareness of the great risk of harm which he had created. In combination, these facts reasonably and readily support a conclusion that defendant acted wantonly and with a conscious disregard for human life.

We do not suggest that the foregoing facts conclusively demonstrate implied malice, or that the evidence necessarily is sufficient to convict defendant of second degree murder. On the contrary, it may be difficult for the prosecution to carry its burden of establishing implied malice to the moral certainty necessary for a conviction. Moreover, we neither contemplate nor encourage the routine charging of second degree murder in vehicular homicide cases. We merely determine that the evidence before us is sufficient to uphold the second degree murder counts in the information, and to permit the prosecution to prove, if it can, the elements of second degree murder.

We need not consider defendant's contention that the degree of his intoxication rendered him incapable of entertaining malice. Such an argument would relate to a diminished capacity defense which properly should be raised and considered at trial. (See, e.g., *Taylor* v. *Superior Court, supra*, 24 Cal.3d at p. 899.)

The judgment of dismissal is reversed.

Tobriner, J., Mosk, J., Newman, J., and Lachs, J.,* concurred.

**BIRD, C. J.,** Dissenting.—Today, this court not only rewrites the law of implied malice but makes it a virtual certainty that any individual who knowingly drives to a social outing, takes a few drinks, and while driving home is involved in an accident in which a death occurs, may be

---

*Assigned by the Chairperson of the Judicial Council.

charged with murder in the second degree. In order to achieve this unusual result, the majority ignore facts and apply an improper legal standard to reverse the magistrate's refusal to hold respondent to answer and the superior court's grant of respondent's motion to dismiss the charge of murder under Penal Code section 995.

The majority opinion fails to take into account the following evidence which was presented at the preliminary hearing. The prosecutor called Paul Henke as an adverse witness. Henke testified that he was driving along Cypress Avenue when respondent sped by at 55 or 60 miles per hour. As respondent approached the intersection of Cypress and Athens, where the fatal accident occurred, the light was green. At the scene, Henke spoke to some officers, whom he later identified at the trial. No one asked him to make a statement, and the officers merely told him to get out of the way. The next day, Henke called the police because he had heard a news report requesting that witnesses identify themselves. He informed them that he had been a witness. Henke did not know respondent before the accident and had not had any contact with him since.

The prosecutor argued before the magistrate that Henke had perjured himself and that he was hostile toward the police and the district attorney's office. The prosecutor called several officers who testified that they had not seen or spoken to Henke when they arrived at the scene of the accident. They testified that Henke may have arrived later. The prosecutor also contended that Henke's testimony could not be true and claimed it conflicted with expert testimony that respondent must have been speeding at 70 to 80 miles per hour on Cypress Avenue. Other expert testimony was presented concerning the timing of the traffic signal at the scene of the accident. However, the expert witness could not testify as to the color of the light at the time of the accident since he was not there. Apart from Henke, no witness testified about the color of the light.

The majority claim that they are only reviewing undisputed facts. (Maj. opn. at p. 300.) *But material facts*—whether respondent drove down Cypress Avenue at 55 or 60 as opposed to 70 or 80 miles per hour, and whether he had a green light as he started into the intersection where the accident occurred—*were disputed*. The majority acknowledge Henke's testimony. (Maj. opn. at p. 294.) However, in making the crucial determination as to whether there was probable cause to hold respondent to answer, they conveniently ignore Henke's

testimony. (*Id.*, at p. 301.) The only way that they can ignore this testimony, which is in respondent's favor, is to first decide that Henke was not a credible witness. This is not an undisputed fact. It is a conclusion impermissibly drawn by the majority.

If the magistrate had held respondent to answer, the court could draw all legitimate inferences from the evidence which favored that action. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal. Rptr. 581, 432 P.2d 197].) Deference is given to a magistrate's finding of probable cause. The magistrate weighs the evidence, resolves any factual conflicts, and determines the credibility of the witnesses. (*Jones* v. *Superior Court* (1971) 4 Cal.3d 660, 667 [94 Cal.Rptr. 289, 483 P.2d 1241].) The superior or appellate court may not substitute its judgment for that of the magistrate as it relates to conflicts in or the weight of the evidence. (*Ibid.*)

This rule is in accord with the general rule of appellate review that evidence adduced in the trial court is viewed on appeal in the light most favorable to the judgment entered below. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 245, pp. 4236-4238, and cases cited.)

Here, the magistrate failed to find probable cause. Therefore, there is no legal or factual basis for this court to defer to the validity of the information. No deference can be given under these circumstances without directly interfering with the magistrate's power to weigh the evidence and decide disputed factual issues. Yet, that is what the majority have done.

When a superior or appellate court reviews a magistrate's determination that probable cause did *not* exist, the court should resolve all conflicts and draw all reasonable inferences in favor of the judgment below. (Witkin, *op. cit. supra*, at p. 4236.)

In this case any inferences drawn should be in favor of the magistrate's determination of lack of probable cause. These would include the facts that respondent had a green light on Cypress and that he was driving at 55 to 60 miles per hour. These inferences are reasonable. There was no evidence of fabrication or of a motive for Henke to fabricate. He did not know respondent. He had a reasonable explanation for waiting more than a day to give a statement to the police. The officers at the scene of the accident had told him to keep away.

At the preliminary hearing, the prosecution was required to present evidence of each element of a murder based on an implied-malice theory. (*Williams* v. *Superior Court* (1969) 71 Cal.2d 1144, 1148-1149 [80 Cal.Rptr. 747, 81 Cal.Rptr. 761, 458 P.2d 987]; *Birt* v. *Superior Court* (1973) 34 Cal.App.3d 934, 937 [110 Cal.Rptr. 321].) As the majority recognize, those elements are that the accused, "knowing that his conduct endanger[ed] the life of another, nonetheless act[ed] deliberately with conscious disregard for life." (Maj. opn. at p. 296.) In other words, the accused must have (1) intended to commit an act likely to kill with (2) conscious disregard for life. (*People* v. *Washington* (1965) 62 Cal.2d 777, 780 [44 Cal.Rptr. 442, 402 P.2d 130].) The majority fail to demonstrate that the existence of either element can reasonably be inferred from the facts presented below.

Given Henke's testimony, it cannot be found that respondent committed an act likely to kill. The act of speeding through a green light at 55 or 60 miles per hour in a 35-mile-per-hour zone was dangerous, but was not an act likely to result in the death of another. It was 1 o'clock in the morning. The person whose car respondent nearly collided with testified that he saw no other cars around.

Respondent's acts were not comparable to those of the defendants in *People* v. *Fuller* (1978) 86 Cal.App.3d 618 [150 Cal.Rptr. 515], cited by the majority (maj. opn. at pp. 298-299). In that case, the court observed *in dicta* that the defendants could be prosecuted for second degree murder on an implied-malice theory. (86 Cal.App.3d at pp. 628-629.) The defendants had fled from the police after being caught in an attempted auto burglary. They sped through the main thoroughfares of Fresno at 8:30 on a Sunday morning. They were driving on the wrong side of the road and cars had to swerve off the road to avoid them. They ran a red light, causing other cars to stop sharply in order to avoid collisions. They drove their car toward two police vehicles which were attempting to block them. The police were required to take defensive action to avoid a collision. The defendants ran a second red light, collided with another car, and killed its driver. (*Id.*, at pp. 621, 629.) Compare those facts with this case. Respondent drove down empty streets at 1 o'clock in the morning. There was no evidence that he ran a red light at the intersection where the accident occurred. His conduct was not like that evidenced in *Fuller*, where the defendants' acts were likely to result in the death of others.

The fact that respondent was under the influence of alcohol made his driving more dangerous. A high percentage of accidents is caused by such drivers. (*Taylor v. Superior Court* (1979) 24 Cal.3d 890, 898-899 [157 Cal.Rptr. 693, 598 P.2d 854].) No one holds a brief for this type of activity. However, a rule should not be promulgated by this court that driving while under the influence of alcohol is sufficient to establish an act "likely to kill." Death or injury is not the probable result of driving while under the influence of alcohol. "Thousands, perhaps hundreds of thousands, of Californians each week reach home without accident despite their driving intoxicated." (*Id.*, at p. 907, dis. opn. of Clark, J.)

The majority also fail to demonstrate that it is reasonable to infer that respondent had a conscious disregard for life. Can a conscious disregard for life be established by the fact that several hours *before* the accident respondent drove his car to a bar? The majority hold as a matter of law that he "must have known" he would have to drive his car later and that he wilfully drank alcohol until he was under its influence. (Maj. opn. at p. 300.)

How does respondent's state of mind at the time he drove to the bar and began drinking justify an inference that he had a reckless state of mind at the time of the accident? This meager evidence does not justify the inference that by drinking alcohol he harbored a conscious disregard for life when he later drove his car! I submit that the majority's reasoning that such an inference may be drawn to support a finding of implied malice will be used to establish second degree murder in every case in which a person drives a car to a bar, a friend's home, or a party, drinks alcohol so that he is under its influence, drives away and is involved in a fatal accident. Moreover, newly enacted legislation will make it easier than ever to establish implied malice. Under a bill recently signed by the Governor, the rebuttable presumption that a person is under the influence of alcohol if his blood alcohol content is 0.10 percent or more has been eliminated. Instead, the new statute makes it a crime to drive with a blood alcohol content of 0.10 percent or more. In effect, it creates a *conclusive* presumption that the driver is under the influence of alcohol. (Veh. Code, §§ 23102.6, 23126, Stats. 1981, ch. 939, §§ 10, 11, approved by Governor, Sept. 29, 1981, eff. Jan. 1, 1982.) Under this conclusive presumption and the majority's erroneous expansion of the concept of implied malice, a person who had only a few drinks could readily find himself charged with and convicted of second degree murder.

The majority's reasoning also perpetuates the fiction that when a person drinks socially, he wilfully drinks to come under the influence of alcohol and with this knowledge drives home at a later time. This unfounded conclusion ignores social reality. "[T]ypically [a person] sets out to drink without becoming intoxicated, and because alcohol distorts judgment, he overrates his capacity, and misjudges his driving ability after drinking too much." (*Taylor, supra*, 24 Cal.3d at p. 908, dis. opn. of Clark, J.)

Clearly, evidence regarding respondent's drinking earlier in the evening bears little relevance to his state of mind at the time of the accident. The majority's reliance on evidence of respondent's presumed state of mind before he began driving violates the basic principle that a crime cannot be committed unless there is unity of act and intent. (Pen. Code, § 20.)

The majority's errors are compounded by the fact that they improperly *presume* that respondent harbored a conscious disregard for life. Thus, they state that respondent "must have known" he would drive after drinking (maj. opn. at p. 300), and that it "may be presumed that [he] was aware of the hazards of driving while intoxicated" (*ibid.*). These presumptions improperly dilute the requirement that the prosecution must *prove* the accused's intent to commit an act likely to kill with conscious disregard for life.

The majority point to respondent's drinking as evidence of the implied-malice element that he committed an act likely to kill. However, they ignore the fact that driving while under the influence may also show lack of a conscious appreciation of the risk of harm presented to others. (See Pen. Code, § 22.)[1] The majority err in deeming this evidence relevant only at trial when and if a diminished capacity defense is raised. (Maj. opn. at p. 301.)

Finally, the majority distort the evidence and draw the wrong inference from the testimony presented at the preliminary examination that respondent put on his brakes just before the fatal accident. They infer

[1]Section 22 provides: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. *But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act.*" (Italics added.)

that this shows that respondent knew of the risk he created to the lives of others. However, the majority fail to draw the obvious inference that respondent consciously sought to *avoid* the risk of injuring or killing anyone. The latter inference tends to disprove the element required for implied malice that the act evidenced a conscious disregard for life.

The elements of implied malice have not been established. Speeding through a green light is not an act likely to kill. Nor was this act done intentionally with conscious disregard for life. The fact that respondent earlier that evening drove to a bar is of little probative value in determining his state of mind sometime later.

The only evidence bearing significantly on respondent's state of mind was the fact that he was driving at a time when he was under the influence of alcohol. This fact tends to disprove the element of conscious disregard for life. To rule otherwise is to establish with one stroke of the pen a new crime of second degree murder for anyone who is involved in an accident when driving a vehicle while under the influence of alcohol, where the accident results in the death of another person.

The fact that the Legislature adopted a vehicular manslaughter statute (Pen. Code, § 192, subd. 3), indicates that the Legislature intended that statute to cover these situations. I am certain the Legislature never foresaw that this court would expand the concept of implied malice so as to rewrite the law in this area. I cannot so lightly rewrite the Legislature's statutes nor so blithely ignore the pertinent facts to achieve a judicial result. I respectfully dissent.

IBÁÑEZ, J.*—I respectfully dissent. The evidence presented at the preliminary hearing failed to establish reasonable or probable cause that murder (Pen. Code, § 187) was committed. Moreover, that same evidence made impermissible tandem charges of vehicular manslaughter (Pen. Code, § 192, subd. 3(a)) and murder (Pen. Code, § 187) under the rule that a specific statute preempts a general statute. (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593]; *People* v. *Jenkins* (1980) 28 Cal.3d 494 [170 Cal.Rptr. 1, 620 P.2d 587].) Also, a reasonable interpretation of these two statutes, the history of their enactments, as well as their relationship to each other and to the statutory scheme, indicate that the Legislature did not intend such tandem charges as have been approved by the majority.

---

*Assigned by the Chairperson of the Judicial Council.

The majority acknowledges the rule in *Williamson* but murder (§ 187), it emphasizes, has one element not present in vehicular manslaughter (§ 192), namely, malice. Hence, the majority concludes, the rule in *Williamson* is inapplicable. This asserted difference, in the context of the evidence before us, is more apparent than real. The definitional boundary line separating the two is illusory, inadequate as a guideline for making critical or even gross distinctions. Justice Blease, for a unanimous court which affirmed the order below, wrote, "The People seek to convert this offense [the elements of an offense supported by the evidence presented] into second degree murder by ... verbal similarities between the element of gross negligence [involving a vehicle] in the offense of vehicular manslaughter (Pen. Code, § 192, subd. 3(a)), and the element of implied malice (Pen. Code, § 188) in the offense of second degree murder (Pen. Code, § 189.)" The majority opinion, on the other hand, underscores the dissimilarities in the language of the two statutes and thereby concludes that discrete differences exist between them making the preemption rule inapplicable.

The majority concludes that "If the facts surrounding the offense support a finding of 'implied malice,' second degree murder may be charged; if the facts demonstrate only 'gross negligence', a vehicular manslaughter charge may be sustained." (Maj. opn., at p. 294.) There is a similarity between implied malice and gross negligence in that both require, as an element of the offense, an awareness of the risk involved. But there is also a difference. Implied malice requires a higher degree of awareness states the majority. In determining whether the greater or the lesser offense has been committed by the defendant motorist, the degree as well as the nature of his awareness of the risk involved must be resolved by the finder of fact. For a finding of implied malice, the "actually knows" or subjective test is to be applied, i.e., Did the defendant motorist actually foresee the dangerous consequences? Did he actually appreciate the risk involved? (*People* v. *Phillips* (1966) 64 Cal.2d 574, 588 [51 Cal.Rptr. 225, 414 P.2d 353].) The majority further points out implied malice involves an element of wantonness[1] which is absent in gross negligence (citing Pen. Code, § 188; *Kastel* v. *Steiber* (1932) 215 Cal. 37, 46 [8 P.2d 474]). (Maj. opn., at p. 296.) The offenses based upon "gross negligence" are to be determined by the

---

[1]"Wantonness" is defined as follows: "Conscious doing of some act or the omission of some duty with knowledge of existing conditions and consciousness that, from the act or omission, injury will result to another...." (Black's Law Dict. (4th rev. ed. 1968) p. 1753.)

"should know" or objective test, namely: Would a reasonable person, in the position of the defendant have foreseen the dangerous consequences? The majority notes that if a reasonable person in defendant's position would have been aware of the risk involved then the defendant is presumed to have had such an awareness. (Citing *Weber* v. *Pinyan* (1937) 9 Cal.2d 226, 230-231 [70 P.2d 183, 112 A.L.R. 407].)

"[T]he objective test has been criticized as establishing a harsh and unjustifiable doctrine of 'negligent murder.' (See 49 Cal.L.Rev. 254 . . . and see 13 Stanf.L.Rev. 255, suggesting statutory revision to clarify the law.)" (1 Witkin, Cal. Crimes, § 327, pp. 300-301.)

It appears from the foregoing recital of the guidelines to be applied in differentiating second degree murder and vehicular manslaughter, as announced by the majority, that certain consequences follow: Initially, the prosecutor must decide, in a given case, whether to charge or not to charge both murder and vehicular manslaughter. From a wide range of culpability on the part of the defendant motorist, the prosecutor must determine what charges are appropriate.[2] Neither he, nor ultimately the trier of facts will have clear guidelines. In this connection the guidelines for determining manslaughter are a contrast in specificity to the guidelines offered by the majority. Manslaughter, as defined, can be a felony if it is based upon a finding of gross negligence or upon a finding of intoxication; it can be a misdemeanor if it is based upon negligence. (See Pen. Code, § 192, subd. 3(a); Veh. Code, § 23101; CALJIC Nos. 8.90-8.97; Fricke-Alarcon, Cal. Criminal Law (11th ed.) pp. 166-169.)

Facing this court is not the question of whether the sanctions under the general law of murder should not be imposed where the culpability in the operation of a vehicle is extreme and it proximately causes the death of a human being. This is a policy decision for the Legislature and not for this court to make.[3]

---

[2]"[V]ague statutory language also creates the danger that police, prosecutors, judges and juries will lack sufficient standards to reach their decisions, thus opening the door to arbitrary or discriminatory enforcement of the law." (*Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 252 [158 Cal.Rptr. 330, 599 P.2d 636]; see also *In re Berry* (1968) 68 Cal.2d 137, 156, fn. 15 [65 Cal.Rptr. 273, 436 P.2d 273].)

[3]"Writing more than 20 years ago, Justice Peters pointed out that for more than the preceding 20 years the established rule holds that drunk driving does not warrant punitive award, and that if radical change in policy is to be accomplished, 'it should be accomplished by the Legislature not by the courts.' (*Gombos* v. *Ashe, supra*, 158 Cal.App.2d at p. 528 [322 P.2d 933].) While fully cognizant of the grave problem of

By an interplay of words the majority has created an amorphous definitional boundary line separating gross negligence on one side and implied malice on the other. This is the basis for the new crime created by the majority. This makes murder out of an unintentional killing of a human being proximately resulting from extreme culpability on the part of a defendant motorist in the operation of a vehicle. Admittedly, all deaths caused by a vehicle are not necessarily manslaughter. A vehicle, like a gun, a knife, a club, can be used to inflict injury and from the manner in which it is used an inference can be made that the party intended the consequences of his act. (See Annot., Murder—Homicide by Automobile (1968) 21 A.L.R.3d 116-163.)

The definitional classification of the offenses, their respective punishment, the consequences resulting from a failure to keep them separate, as has been noted above, compels the conclusion that the Legislature did not intend to permit tandem charges of murder and vehicular manslaughter under facts such as are now before the court.

The legislative history of vehicular manslaughter also makes clear the legislative intent.

In 1935, as part of its first Vehicle Code, California enacted section 500, a specific vehicular homicide statute.[4]

In 1941, section 500 was amended to make clear that it supplanted the Penal Code provisions relating to involuntary manslaughter in *all* cases where a homicide was "caused by the driving of any vehicle."[5]

---

drunk driving, the Legislature has not accepted the court's invitation to change the law. The Legislature may choose to respond as it did in repudiating this court's last foray to enlarge liability for drunk driving. (Stats. 1978, ch. 929 amending Bus. & Prof. Code, § 25602 and repudiating *Coulter* v. *Superior Court* (1978) 21 Cal.3d 144 [145 Cal.Rptr. 534, 577 P.2d 669].)" (*Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 910 [157 Cal.Rptr. 693, 598 P.2d 854].)

[4]"When the death of any person ensues within one year as the proximate result of injuries caused by the driving of any vehicle in a negligent manner or in the commission of an unlawful act not amounting to felony, the person so operating such vehicle shall be guilty of negligent homicide, a felony, and upon conviction thereof shall be punished by imprisonment in the county jail for not more than one year or in the State prison for not more than three years." (Stats. 1935, ch. 27, § 500, pp. 173-174.)

[5]The amendments are emphasized. "When the death of any person ensues within one year as the proximate result of injuries caused by the driving of any vehicle with *reckless disregard of, or wilful indifference to, the safety of others*, the person so operating such vehicle shall be guilty of negligent homicide, a felony, and upon conviction thereof shall be punished by imprisonment in the county jail for not more than one year or in the State prison for not more than three years. *Hereafter, the provisions of the Penal*

In 1943, Vehicle Code section 500 was repealed and, in the same chapter, Penal Code section 193, prescribing the punishment for manslaughter, was amended to include the following language: "[A] violation of subdivision 2 of Section 192 of this code [i.e., involuntary manslaughter] resulting from the operation of a vehicle is punishable by imprisonment in the county jail for not more than one year or in the State Prison for not more than five years." (Stats. 1943, ch. 421, § 2, p. 1959.) By including the repeal of Vehicle Code section 500 and the amendment of Penal Code section 193 as the only two items in a single bill, the Legislature's intent to reintegrate the "wilful indifference" standard into Penal Code section 192 governing manslaughter is manifest.

In the following legislative session (1945), this intent was embodied in the adoption of the present vehicular manslaughter statute—Penal Code section 192, subdivision 3. (Stats. 1945, ch. 1006, § 1, p. 1943.)

Finally, I agree with the views expressed by Chief Justice Bird and respectfully join in her dissent.

Respondent's petition for a rehearing was denied December 30, 1981. Bird, C. J., was of the opinion that the petition should be granted.

---

*Code, defining involuntary manslaughter, shall not apply to homicide caused by the driving of any vehicle.*" (Italics added.) (Stats. 1941, ch. 279, § 1, p. 1414; see generally *People* v. *Mitchell* (1946) 27 Cal.2d 678, 684-685 [166 P.2d 10].)

The amendments also reveal that the Legislature sought to remove from the jurisdiction of the Penal Code all conduct involving the driving of any vehicle "with reckless disregard of, or wilful indifference to, the safety of others."