Filed 12/12/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MAXIMINO DELGADO LAGUNAS,<br><br>    Defendant and Appellant. | G061812<br><br>(Super. Ct. No. 18NF0496)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael A. Leverson, Judge.  Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Maximino Delgado Lagunas was driving under the influence of alcohol in a residential area. Lagunas accelerated through a turn, lost control of his vehicle, and killed a six-year-old girl as she was playing on a sidewalk with a nine-year-old boy. The prosecution charged Lagunas with one count of second degree implied malice murder, or what is commonly known as a "*Watson* murder." (See *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*).) The prosecution filed no lesser related charges. A jury found Lagunas guilty.[1] The trial court imposed a sentence of 15 years to life in prison.

On appeal, Lagunas claims there was insufficient evidence he deliberately acted with implied malice. Lagunas also claims the trial court erred by not instructing the jury on a lesser related offense (gross vehicular manslaughter while intoxicated). We find no errors and affirm the judgment.

I

FACTS AND PROCEDURAL BACKGROUND

On Saturday, February 17, 2018, at about 2:15 p.m., a man was sitting in a vehicle outside of his grandmother's house looking at his phone. The man looked up when he heard Lagunas loudly slam the door of a 1990 Toyota 4Runner. Lagunas was about four houses away on the opposite side of the street. The man watched as Lagunas started his vehicle and drove down the middle of the street. The man estimated Lagunas was going about 40 miles per hour and described his driving as: "Erratic, unresponsible, too fast, dangerous."

As Lagunas approached a T-intersection he attempted to make a right-hand

---

[1] Lagunas argues: "Criminal courts are not supposed to be gambling halls where juries are faced with all or nothing verdicts." Lagunas claims the prosecution "engineered an all or nothing case by only charging second degree murder, betting that no jury would let appellant walk free after causing the death of an innocent little girl." We are not taking a position on this oft-raised argument, but we are publishing this opinion to make clear that this argument is more properly directed to the Legislature.

2

turn. The man watched as Lagunas could not negotiate the turn. The man saw the 4Runner drift across the road, and then watched as the vehicle ran over a curb and drove onto a sidewalk in front of a home. The man lost sight of the vehicle, but he heard screeching, the sound of a small boy crying, and a loud crash. The man ran towards the area and saw Lagunas had crashed into a car. The man approached Lagunas and told him to wait for the police. The man said Lagunas "was incoherent. I couldn't understand what he was trying to say."

Two neighbors came out of their homes after hearing the collision. The neighbors saw that a six-year-old girl was lying on a lawn next to a sidewalk. The girl had been playing outside with a nine-year-old boy (her cousin) when Lagunas' vehicle struck her. The girl was bleeding profusely and breathing laboriously. One of the neighbors attempted to administer first aid. The girl's mother and father both eventually came to her side. The girl was transported to a hospital where she later died due to multiple vehicular blunt force injuries.

Police arrived at the scene and spoke to Lagunas, who was now outside his vehicle and sitting on the curb. One officer was about four to five feet away from Lagunas, who had no physical injuries. The officer noticed Lagunas was exhibiting objective signs of alcohol impairment (watery eyes and the odor of alcohol). Another officer conducted field sobriety tests. Lagunas was unable to follow simple instructions and had unsteady balance. Police formed the opinion Lagunas was under the influence of alcohol. Police searched the vehicle and found one empty Modelo beer can in the center console and three more empty beer cans in the back of the SUV. Police took Lagunas to the station where he spoke to investigators in two recorded interviews.

Lagunas said that before the collision he had been painting a bathroom at a nearby home. Lagunas claimed the brakes in his vehicle locked up, he could not control the steering, and he could not turn. Lagunas "said he recalled some children playing on the lawn of one of the houses." Lagunas "didn't specify where or what house, but that

3

those children realized he had lost control and that the brakes locked up and they had run . . . prior to him colliding into the other vehicle." Lagunas said he did not know he had hit anyone, and when he was told he had killed a child, he put his face in his hands and said that was horrible.

Lagunas initially said he drank one 24 oz. can of beer at the jobsite after he completed his work, but he later admitted to drinking another can during breakfast, and then another can as he was working (three total). Lagunas said that he felt fine when he drove, but he later said that was a poor decision and, "I shouldn't have drove." Lagunas eventually said, "Yes I was drunk." Lagunas had been convicted of driving under the influence in 2007 and 2015. Lagunas admitted that in both cases a judge had warned him that he could be convicted of murder if he continued to drive while intoxicated and hit someone. Lagunas also said he was also warned in Alcoholics Anonymous meetings about "the consequences or dangers of driving while intoxicated."

*Court Proceedings*

The Orange County District Attorney filed an information charging Lagunas with one count of murder. The District Attorney filed no lesser related charges or sentencing enhancements.

At a jury trial, an experienced traffic investigator testified as to what he saw at the intersection of Gage Avenue and Lombard Drive (see diagram below). The investigator observed centrifugal tire friction marks, meaning marks made by a tire while it was still rotating (as opposed to skid marks made by a tire being braked). As to the collision, the expert opined Lagunas was in his vehicle (V-1) travelling on Gage and made a right turn at the T-intersection at Lombard. Lagunas then "accelerated into the turn, hitting the curb . . . which would be the first point of impact in the collision." Lagunas then "continued over the curb and off the road onto the sidewalk where . . . [there was] the point of impact with the pedestrian [(P-2)]."

4

Lagunas' "vehicle continued southbound off the road on private property until it" collided with a parked car (V-3).



Another investigator testified that he visually examined and physically tested Lagunas' 4Runner after the collision for any mechanical problems. The investigator opined the: "Braking system was working very well. It was working properly, and I saw zero issues with it." As far as the steering system, the expert said, "I would give the same opinion. It was working very well. There were no issues with it. It was responsive. And everything about the vehicle and those tests performed as I would expect. I did not observe any deficiencies or anything that I would be able to articulate could have contributed to the crash."

A forensic scientist testified as to Lagunas' blood-alcohol concentration (BAC). The collision had occurred at about 2:15 p.m., and Lagunas' blood was drawn at about 7:00 p.m. The tests revealed a BAC of .158 percent and .160 percent. The expert calculated Lagunas' BAC would have been between .22 percent and .23 percent at the time he was driving. The expert opined Lagunas had "somewhere between 11 and 12

standard drinks worth of alcohol in" his system at the time of the collision.  A "standard drink" is one 12-ounce can of light beer, a four-ounce glass of wine, or about one shot of 80 proof liquor.

The trial court admitted into evidence recordings of Lagunas' police interviews with transcriptions.  The court also admitted numerous photographs of the crime scene and other documents, including evidence of Lagunas' driving under the influence conviction in 2015.  On the plea form, Lagunas had initialed next to the following:  "I have been advised that being under the influence of alcohol or drugs, or both, impairs your ability to safely operate a motor vehicle.  Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both.  If I continue to drive while under the influence of alcohol or drugs, or both, and as a result of that driving someone is killed, I can be charged with murder."

The jury found Lagunas guilty of murder in the second degree as charged. The trial court imposed a sentence of 15 years to life.

II

DISCUSSION

Lagunas claims:  A) there was insufficient evidence to support his murder conviction; and B) the trial court committed error by not instructing the jury on a lesser related offense of vehicular manslaughter.  We shall analyze each claim.

A.  *Sufficiency of the Evidence*

Lagunas contends there was insufficient evidence to support the jury's judgment that he acted with implied malice.  We disagree.

"In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one."  (*People v. Smith* (2005) 37 Cal.4th 733, 738–739.)  We "evaluate the whole record in the light most favorable to the judgment to determine whether it discloses

6

substantial evidence—evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Ramos* (2016) 244 Cal.App.4th 99, 104.) We presume in support of the judgment every fact that could reasonably be deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

"In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

"Murder is the unlawful killing of a human being . . . with malice aforethought." (Pen. Code, §187, subd. (a).)[2] "Manslaughter is the unlawful killing of a human being without malice." (§ 192.) Under California's murder statutes, "malice may be express or implied." (§ 188, subd. (a).) "Malice is implied when an unlawful killing results from a willful act, the natural and probable consequences of which are dangerous to human life, performed with conscious disregard for that danger." (*People v. Elmore* (2014) 59 Cal.4th 121, 133.)

Specifically, malice may be implied when a person drives a motor vehicle under the influence of alcohol and kills someone. (*Watson*, *supra*, 30 Cal.3d. 290.) In *Watson*, defendant had been drinking alone at a bar and then drove with a BAC of .23 percent. Defendant struck another vehicle in an intersection at 70 miles per hour, killing two people. (*Id*. at pp. 293–294.) Defendant was charged with two counts of murder and related charges. (*Id*. at p. 294.) In an appeal from a denial of a pretrial motion to dismiss the murder counts (§ 995), defendant argued that in a homicide case involving a motor

---

[2] Further undesignated statutory references are to the Penal Code.

7

vehicle, the prosecution can only charge a person with vehicular manslaughter and not murder. (*Watson*, at p. 294.) The Supreme Court disagreed and held "that if the facts surrounding the offense support a finding of 'implied malice,' second degree murder may be charged." (*Ibid*.) The Court noted defendant had driven his car to a bar alone so "he must have known that he would have to drive it later. It also may be presumed that defendant was aware of the hazards of driving while intoxicated." (*Id.* at p. 300.) The Court also noted that before the collision, defendant had been driving at high speeds, ran a red light, and narrowly avoided hitting another car. (*Id.* at p. 301.)

Following *Watson*, published opinions have—without exception—found sufficient evidence to uphold murder convictions when defendants kill people while driving under the influence of alcohol. (See, e.g., *People v. Autry* (1995) 37 Cal.App.4th 351.) Generally, these implied malice murder convictions "have relied on some or all of the following factors" that were present in *Watson*: "(1) blood-alcohol level above the .08 percent legal limit; (2) a predrinking intent to drive; (3) knowledge of the hazards of driving while intoxicated; and (4) highly dangerous driving." (*Autry*, at p. 358.)

All of the above four factors were present in this case. An expert opined Lagunas was driving with a BAC of between .22 and .23 percent at the time of the collision; therefore, there was evidence Lagunas was driving nearly three times the legal limit of .08 percent. Lagunas told police he drove to his worksite alone, took alcohol with him, and then drank alcohol at the worksite; therefore, there is a reasonable inference Lagunas had "a predrinking intent to drive" after consuming alcohol. (See *People v. Autry*, *supra*, 37 Cal.App.4th at p. 358; see also *Watson*, *supra*, 30 Cal.3d at p. 300 [defendant had driven his car to a bar "where he had been drinking, and he must have known that he would have to drive it later"].) Lagunas had prior convictions for driving under the influence of alcohol in which he was explicitly warned that he could be convicted of murder if he continued to do so, and he also admitted attending Alcoholics Anonymous meetings in which he was warned of the dangers of drunken driving;

8

therefore, there was evidence Lagunas had knowledge of the hazards of driving while intoxicated. Finally, Lagunas drove at such a high speed in a residential neighborhood that he could not negotiate a turn, he did not apply his brakes (despite seeing children running away from his vehicle), and he ultimately killed a six-year-old child as a result; therefore, there is circumstantial evidence supporting the jury's implicit determination that Lagunas engaged in highly dangerous driving.

In sum, we find substantial evidence in the record to support the jury's determination that Lagunas deliberately acted with conscious disregard for human life (implied malice). (See *Watson*, *supra*, 30 Cal.3d. 290.)

Lagunas cites no California published opinions in which an appellate court has ever *reversed* a defendant's implied malice murder conviction involving driving under the influence (a *Watson* murder) on the basis of insufficient evidence. And in our legal research, we have similarly found no such published opinions.

Nonetheless, Lagunas cites numerous published opinions in which appellate courts have *affirmed* implied malice murder convictions (*Watson* murders) when the defendant has challenged the sufficiency of the evidence. Ostensibly, Lagunas cites these opinions for the purpose of arguing that there were more egregious facts present in those cases as compared to the facts in the instant case. (See, e.g., *People v. Wolfe* (2018) 20 Cal.App.5th 673, 677 [defendant drove with a BAC of .34 percent]; *People v. Johnigan* (2011) 196 Cal.App.4th 1084, 1087–1088 [defendant refused offers to be driven home]; *People v. Moore* (2010) 187 Cal.App.4th 937, 939 [defendant drove 80 to 90 miles per hour in a 35 miles per hour zone]; *People v. Contreras* (1994) 26 Cal.App.4th 944, 947–957 [defendant knew his brakes were not operating properly]; *People v. David* (1991) 230 Cal.App.3d 1109, 1111–1112 [defendant was high on PCP]; *People v. Olivas* (1985) 172 Cal.App.3d 984, 986 [defendant drove a stolen car in a high speed chase]; *People v. Albright* (1985) 173 Cal.App.3d 883, 884–885 [defendant drove with the intent to kill himself].)

9

But we do not find Lagunas' factual comparisons to be persuasive. Again, when we review for substantial evidence, we must presume in support of the judgment the existence of every fact that a trier of fact could reasonably deduce from the evidence. (*People v. Kraft*, *supra*, 23 Cal.4th at p. 1053.) "When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact." (*Grainger v. Antoyan* (1957) 48 Cal.2d 805, 807.)

That is, even if we accept Lagunas' premise that there are prior published opinions that contain more egregious hazardous driving and/or higher levels of alcohol intoxication by those particular defendants, that argument simply does not negate the substantial evidence that exists in this case. Our role in a sufficiency of the evidence review is not to engage in a comparative analysis of various cases, but rather to carefully scrutinize the record *in the instant case* for substantial evidence (as we have).

Finally, Lagunas argues that in the police interview after the collision he said that the steering system and the brakes in his vehicle did not work. But at trial, there was testimony that the vehicle's steering and brakes worked fine, and also that Lagunas accelerated during the turn. Based on this, Lagunas argues: "A reasonable inference is that appellant tried to hit the brake pedal but hit the accelerator instead." But this is the type of factual argument that is more properly directed to the trier of fact. In a sufficiency of evidence review, an appellate "court resolves neither credibility issues nor evidentiary conflicts." (*People v. Young, supra,* 34 Cal.4th at p. 1181.)

To reiterate and conclude as to Lagunas' first claim of error, we hold that there is substantial evidence in the record to support the jury's determination that he "deliberately acted with conscious disregard for human life." (See CALCRIM No. 520.)

10

*B. Gross Vehicular Manslaughter While Intoxicated*

Lagunas contends the trial court erred by failing to instruct the jury on its own motion on the *lesser related* offense of gross vehicular manslaughter while intoxicated. (§ 191.5, subd. (a); CALCRIM No. 592.) We disagree.

Generally, a trial court must instruct a jury on any *lesser included* offenses that are supported by the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 154–155, disapproved on a different point of law in *People v. Schuller* (2023) 15 Cal.5th 237, 260, fn. 7.) "Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117–118.) However, without the consent of the prosecutor, a trial court has no obligation to instruct a jury on any *lesser related* offenses. (*Id*. at p. 136.)

When a defendant is charged with murder, a gross vehicular manslaughter while intoxicated charge may be a related offense, but it is not necessarily included within a murder charge. (*People v. Sanchez* (2001) 24 Cal.4th 983, 990 (*Sanchez*).) In *Sanchez*, the defendant drove with a BAC of .17 percent and crashed into another vehicle, killing its passenger. (*Id*. at pp. 986–987.) The jury convicted the defendant of murder, gross vehicular manslaughter while intoxicated, and other offenses. (*Id*. at p. 986.) The defendant argued that the gross vehicular manslaughter while intoxicated charge was necessarily included within the murder charge, and he could not be convicted of both. (*Id*. at p. 989.) The Supreme Court disagreed, noting that a charge of vehicular manslaughter while intoxicated includes two additional elements not included in a murder charge: 1) the defendant's use of a vehicle; and 2) the defendant's intoxication. (*Id*. at p. 991.) Since a second degree (implied malice) murder conviction does not *necessarily* require proof of either of those two elements, the Court concluded that the lesser crime was not necessarily included within the greater. (*Id*. at pp. 992–993.) Thus,

11

the Court explicitly held, "gross vehicular manslaughter while intoxicated should not be treated as a lesser included offense of murder." (*Id*. at p. 992.)

California courts are required to follow precedent. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Thus, we hold the trial court did <u>not</u> commit error by failing to instruct the jury on its own motion on the crime of gross vehicular manslaughter while intoxicated because that crime is <u>not</u> a *lesser included* offense of a murder charge. (See *Sanchez*, *supra*, 24 Cal.4th at p. 983.)

Lagunas accepts the binding holding of the Supreme Court. (See *Sanchez*, *supra*, 24 Cal.4th at p. 983.) Nevertheless, Lagunas argues: "Under the plain meaning of the word 'manslaughter' the Legislature intended the vehicular manslaughter offenses to be lesser included offenses of murder." We disagree.

After reviewing the relevant statutes, we find no statutory language whatsoever to support Lagunas' notion that the Legislature intended that a vehicular manslaughter charge is a lesser included offense of a murder charge.

When construing a statute, our goal is to ascertain legislative intent to effectuate the purpose of the law. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94.) "When the language is clear, the plain meaning . . . is determinative and there is ordinarily no need to look beyond the statute itself." (*People v. Douglas* (2000) 79 Cal.App.4th 810, 814; *Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371 ["When the words are clear and unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history"].)

Courts may neither insert words nor delete words in an unambiguous statute; the drafting of statutes is solely a legislative power. (*People v. Hunt* (1999) 74 Cal.App.4th 939, 945–946.) "In construing this, or any, statute, our office is simply to ascertain and declare what the statute contains, not to change its scope by reading into it language it does not contain or by reading out of it language it does. We may not rewrite

12

the statute to conform to an assumed intention that does not appear in its language." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253.)

"Manslaughter is the unlawful killing of a human being without malice." (§ 192.)  The Legislature's general manslaughter statute delineates three "kinds" of manslaughter:  voluntary, involuntary, and vehicular.  (§ 192, subds. (a)(b) & (c).) Within the vehicular manslaughter section, the statute generally delineates two types of vehicular manslaughter crimes:  those with—and those without—"Gross negligence." (§ 192, subd. (c)(1), (2).)  The vehicular manslaughter provisions do not explicitly define the term gross negligence, but the statute provides that gross negligence may include, for example, the defendant's participating in a motor vehicle speed contest or speeding over 100 miles per hour.  (§ 192, subd. (e)(2)(A), (C).)  The statute provides:  "'Gross negligence,' as used in this section, does not prohibit or preclude a charge of murder under Section 188 upon facts exhibiting wantonness and a conscious disregard for life to support a finding of implied malice, or upon facts showing malice, consistent with the holding of the California Supreme Court in *People v. Watson* (1981) 30 Cal.3d 290." (§ 192, subd. (e)(1).)  Nowhere in the general vehicular manslaughter statute (§ 192) does the Legislature mandate that a vehicular manslaughter charge is to be treated as a lesser included offense of a *Watson* murder charge.

There is a separate statute that provides:  "Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of . . . the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence . . . ."  (§ 191.5, subd. (a).)  Within section 191.5, the statute provides:   "This section shall not be construed as prohibiting or precluding a charge of murder under Section 188 upon facts exhibiting wantonness and a conscious disregard for life to support a finding of implied malice, or upon facts showing malice consistent with the holding of the California Supreme Court in *People v. Watson*

13

30 Cal. 3d 290." (§ 191.5, subd. (e).) Nowhere in the gross vehicular manslaughter while intoxicated statute (§ 191.5) does the Legislature mandate that a gross vehicular manslaughter while intoxicated charge is to be treated as a lesser included offense of a *Watson* murder charge.

The only other apparently relevant statute provides (in full): "The jury, or the judge if a jury trial is waived, may find the defendant guilty of any offense, the commission of which is *necessarily included* in that with which he is charged, or of an attempt to commit the offense." (§ 1159, italics added.)

Under section 1159, and consistent with precedential case law, a trial court is obligated to instruct a jury on lesser included offenses *if there is substantial evidence* that one or more of the elements of the charged offense is not present, and therefore the jury could possibly find the defendant guilty of only the lesser included offense. (See *People v. Barton* (1995) 12 Cal.4th 186, 194–195.)

In other words, the evidence admitted at a particular defendant's jury trial is highly relevant in determining whether a judge has a duty to instruct the jury on any lesser included offenses; therefore, as a practical matter, it is difficult to imagine how the Legislature could broadly designate any lesser included offenses for any particular crimes (presuming the Legislature intended to do so). But, of course, the drafting of statutes is a role for the legislative branch and not the judicial branch.[3]

In sum, we have found absolutely no statutory language whatsoever (ambiguous or otherwise) that indicates the Legislature intended that a gross vehicular manslaughter while intoxicated charge (§ 191.5) is a lesser included offense of a murder charge (§ 187); therefore, we need not address Lagunas' rather extensive legislative history arguments. (See *Quarterman v. Kefauver*, *supra*, 55 Cal.App.4th at p. 1371 ["When the words are clear and unambiguous, there is no need for statutory construction

---

[3] Lagunas has not cited any California statutes in which the Legislature has designated any crimes as necessarily included within any other crimes.

14

or resort to other indicia of legislative intent, such as legislative history"].)

However, we would note the Supreme Court filed the *Sanchez* opinion in 2001, and the Legislature has taken no subsequent action to modify or abrogate that holding. (See *Sanchez*, *supra*, 24 Cal.4th at p. 983.) That is, the Legislature's failure to act for over two decades tends to indicate its acquiescence to the Supreme Court's holding that a vehicular manslaughter charge is <u>not</u> a lesser included offense of a murder charge. (See *People v. Soto* (2011) 51 Cal.4th 229, 247 ["When the Legislature fails to act in the face of a direct holding, a conclusion of acquiescence may be in order"].)

Finally, Lagunas argues that an involuntary manslaughter charge (a homicide without malice) is generally a lesser included offense of a murder charge, and a trial court judge ordinarily has an obligation to instruct the jury on an involuntary manslaughter charge in a murder trial (if substantial evidence supports it). (See *People v. Manriquez* (2005) 37 Cal.4th 547, 584.) Lagunas contends "it is unreasonable to treat vehicular manslaughter offenses differently than regular involuntary manslaughter—they are all homicides that lack malice." We disagree.

As this court explained in a prior opinion, the failure to instruct on a vehicular manslaughter charge as a lesser included offense of a murder charge does not offend equal protection principles. (*Wolfe*, *supra*, 20 Cal.App.5th at pp. 684–690.) We reached that conclusion for two reasons. First, as compared to defendants who are charged with other types of implied malice murder, *Watson* murder defendants do not receive unequal treatment under the law. (*Id*. at p. 687.) Second, even if we assume *Watson* murder defendants are treated more harshly (by being denied a manslaughter instruction), such discriminatory treatment is rationally related to the state's legitimate interest "to appropriately punish—and also perhaps to discourage—people from engaging in the highly dangerous conduct of driving under the influence." (*Id*. at p. 690.)

To reiterate and conclude, we hold: (A) there was sufficient evidence to support Lagunas' second degree murder conviction; and (B) the trial court did not

15

commit error by failing to instruct the jury on its own motion on the *lesser related* offense of gross vehicular manslaughter while intoxicated.


### III
### DISPOSITION

The judgment is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


DELANEY, J.

16