Filed 4/26/21  P. v. Leon CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SALVADOR CARRILLO LEON, <br><br> Defendant and Appellant. | F080652 <br><br> (Super. Ct. No. VCF217057) <br><br> **OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Gary L. Paden, Judge.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Smith, J. and De Santos, J.

Appointed counsel for appellant Salvador Carrillo Leon asked this court to review the record to determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.) Leon was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief. This court did not receive a supplemental brief from him. Finding no arguable error that would result in a disposition more favorable to Leon, we affirm.

## PROCEDURAL HISTORY

On April 28, 2010, Leon was convicted by jury of two counts of second degree murder (Pen. Code,[1] § 187, subd, (a)), two counts of gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)), and two counts of driving under the influence causing injury (Veh. Code, § 23153, subd. (a)). In addition, two enhancements were found true alleging Leon caused great bodily injury in the commission of driving under the influence (§ 12022.7, subd. (a)).

On November 3, 2011, this court affirmed Leon's conviction on appeal. (*People v. Salvador Carrillo Leon* (Nov. 3, 2011, F060367) [nonpub. opn.].)

On January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) went into effect. It amended sections 188 and 189, narrowed the scope of culpability for murder, and added section 1170.95 to the Penal Code. (See Stats. 2018, ch. 1015, §§ 1-4.)

On December 2, 2019, Leon filed a petition to vacate his murder conviction pursuant to section 1170.95. Leon checked boxes indicating "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[,]" and that "[a]t trial, [he] was convicted of 2nd degree murder pursuant to the

---

[1] All further undefined statutory citations are to the Penal Code unless otherwise indicated.

2.

felony murder rule of [sic] the natural and probable consequences doctrine." Another box indicating, "[he] could not now be convicted of 2nd degree murder because of the changes made to Penal Code Section 189, effective January 1, 2019[,]" was not checked. Leon also sought appointment of counsel to assist in further proceedings.

On December 17, 2019, the trial court summarily denied Leon's petition without appointing counsel, finding "[a] review of the court file demonstrates that petitioner is not eligible for relief."

On January 21, 2020, Leon filed a timely notice of appeal.

## FACTUAL HISTORY

The following statement of facts is taken from this court's unpublished opinion in *People v. Salvador Carrillo Leon*, *supra*, F060367:

On February 2, 2009, at approximately 2:20 a.m., Jeff Schaeck was driving an 18-wheel truck southbound on Highway 99; there was no fog and the weather was clear. He was alerted over his radio that there was a northbound driver in the southbound lanes. Immediately thereafter, Schaeck saw the headlights of the northbound driver coming toward him; that driver was in the fast lane.

Kurt Moreno was driving his big rig truck on northbound Highway 99 at approximately 2:20 a.m. on February 2, 2009. Near Avenue 24, Moreno noticed a truck driving northbound in the southbound lanes. After seeing the truck, Moreno called 911 to report it. Moreno traveled parallel to Leon's truck for several miles. During this time Moreno could hear at least four other trucks honking their air horns at different times. He saw at least one truck flash its lights at Leon's truck. Moreno never saw Leon's truck react to the air horns or lights.

Moreno saw a vehicle heading towards Leon's truck, saw the vehicle swerve in an attempt to miss the truck, and observed the vehicles collide head on. Moreno stopped his truck and went to the vehicles; another big rig on the scene blocked traffic. Moreno used a fire extinguisher on Leon's truck to try and put out the fire and then went to Lily

3.

Saechao's vehicle when he heard her crying for help. Moreno told Saechao she was being helped. Shortly thereafter the fire truck arrived on the scene and Moreno stepped back to allow the paramedics to work.

Saechao testified she was driving from Sacramento on southbound Highway 99; her husband and infant son were in the car. She switched lanes to pass two cars in front of her. After switching lanes, she saw headlights flash in front of her and swerved. She did not recall anything after that until she awoke in the hospital. She was told that her husband and son had died in the collision. She suffered fractured ribs, a fractured vertebra, and an injury to her jaw.

Deputy Sheriff Merced Zamora arrived on the scene and cut the seatbelt off of Leon. Zamora noticed a strong odor of alcohol coming from Leon. Zamora checked the other vehicle and cut the infant car seat out of the car, with the infant in it. Zamora checked the male passenger and noted he was deceased. Saechao had to be cut from the car with the Jaws of Life and air lifted to the hospital.

Highway Patrol Officer Alexis Mantilla also was dispatched to the scene of the collision. Mantilla noticed a heavy odor of alcohol coming from Leon. Leon was trying to remove the emergency medical equipment and waving his arms and using profanity. Leon's eyes were twitching, red, and glossy. His speech was broken and slurred. Leon was unable to track stimuli with his eyes. The preliminary alcohol screening showed a blood-alcohol level of between 0.18 and 0.19 percent.

Leon told Mantilla that he had drunk two Bud Lights at a bar and then got onto Highway 99 at Avenue 24. Leon insisted he had been in the northbound lanes and that a vehicle crossed into his lane. Mantilla testified that a person entering the freeway from Avenue 24 and heading the wrong direction would have seen a "wrong way" sign posted with an arrow.

Mantilla also testified that once a person has a DUI conviction, he or she is required to attend a program to get his or her license back. The program teaches DUI

4.

offenders that it is dangerous to drink and drive because they may kill someone. The trial court took judicial notice that the SB 38 program is a DUI offender program that teaches the dangers of drinking and driving.

Leon was interviewed again at the hospital. He explained that he had been visiting a friend, had 2 or 3 cans of beer, and then headed home. He claimed he was headed north on Highway 99 and that a car got in his way.

The sample of Leon's blood taken at 3:48 a.m. showed a blood-alcohol level of 0.25 percent. Jennifer Kearney, a lab supervisor at Mineral King Laboratories, opined that a man of Leon's size would have to drink 13 to 14 twelve-ounce beers to reach a 0.25 percent blood-alcohol level, assuming no burnoff. Generally, a person burns off 0.02 percent blood alcohol per hour.

Ruben Gonzales testified that Leon was at his house and had drunk four 12-ounce cans and two bottles of beer before leaving to drive home.

Leon was charged with two counts of second degree murder, two counts of gross vehicular manslaughter while intoxicated, one count of DUI causing injury, and one count of driving with a blood-alcohol content greater than 0.08 percent. It was alleged that Leon inflicted great bodily injury and that he had suffered four convictions of Vehicle Code section 23152, subdivision (a).

The parties stipulated that Vilai Her and Isaac Her died as a result of blunt force trauma in the collision. Leon admitted three DUI convictions.

On January 21, 2010, the jury returned verdicts of guilty on all counts and found all enhancements true.

Leon was sentenced to two indeterminate terms of 15 years to life on the second degree murder convictions. The terms for the gross vehicular manslaughter convictions were stayed pursuant to section 654. A total determinate unstayed term of five years was imposed for the other convictions and enhancements.

## DISCUSSION

After reviewing the record, we find no arguable error on appeal that would result in a disposition more favorable to Leon.[2] We initially observe that Leon's petition is facially deficient because he failed to allege he could not now be convicted of murder due to changes made to Penal Code section 188. (*People v. Nunez* (2020) 57 Cal.App.5th 78, 89, review granted Jan. 13, 2021, S265918 ["a defendant convicted of second degree murder under the natural and probable consequences doctrine must allege under penalty of perjury … that changes to section 188 preclude a conviction for murder"]; § 1170.95, subd. (a)(3) [to obtain relief under section 1170.95, a petitioner must make a prima facie showing that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189" made by Senate Bill 1437].) Because Leon failed to carry his burden of making an initial prima facie showing of eligibility for relief under the statute, "the superior court could have denied the petition for resentencing on this basis alone." (*Nunez, supra,* at p. 89.) Insofar as the trial court examined the record of conviction in concluding Leon is ineligible for relief under section 1170.95, we agree with the court's conclusion. Readily ascertainable information in the record refutes Leon's claim in his petition that he was prosecuted under a theory of vicarious liability for murder implicated by Senate Bill 1437.[3] Leon was convicted of second degree murder based upon "actual implied malice, not malice imputed under the natural and probable consequences doctrine." (*People v. Roldan* (2020) 56 Cal.App.5th 997, 1004,

---

[2] The procedures applicable to an appeal from an order denying a post-judgment motion in a criminal matter are currently pending review in the California Supreme Court. (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1039-1040, review granted Oct. 14, 2020 , S264278.)

[3] The issue of whether a superior court may consider the record of conviction in determining whether a petitioner has made a prima facie showing of eligibility for relief under section 1170.95 is currently under review by the California Supreme Court. (*People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598.)

review granted Jan. 19, 2020, S266031 [explaining second degree implied malice murder under *People v. Watson* (1981) 30 Cal.3d 290 is distinct from the natural and probable consequences doctrine, and survives the passage of Senate Bill 1437].)  The natural and probable consequences doctrine of aiding and abetting and the definition of implied malice are sometimes confused because both contain identical language regarding a "natural consequence," but they are "distinctly different concepts."  (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1056-1057, review granted Sept. 23, 2020, S263939.)

Here, malice was not imputed to Leon based upon the actions of an accomplice; it was implied from the circumstances of the murder, including from his prior DUI convictions.  (*People v. Watson, supra,* 30 Cal.3d at pp. 296-297 [a finding of implied malice for second degree murder "depends upon a determination that the defendant actually appreciated the risk involved"].)  Indeed, because Leon was the sole perpetrator of the murders, he could not have been prosecuted under the natural and probable consequences doctrine or the felony murder rule.  These theories of murder involve accomplice liability.  He is therefore ineligible for relief under section 1170.95 as a matter of law.

## **DISPOSITION**

The denial of Leon's petition for resentencing pursuant to section 1170.95 is affirmed.