Filed 5/15/26  P. v. Sosa CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H053373 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C2104494) |
| v. | |
| ANTHONY ANGEL SOSA, | |
| Defendant and Appellant. | |

Defendant Anthony Angel Sosa appeals from a judgment entered after pleading no contest to charges stemming from a hit and run accident, including vehicular manslaughter and driving under the influence.  Appointed counsel for Sosa filed an opening brief which provides the procedural and factual background of the case but raises no legal challenge to the disposition.  Counsel asks this court to conduct an independent review of the record to determine whether there are any arguable issues.  (See *People v. Wende* (1979) 25 Cal.3d 436.)  Sosa was advised of the right to file written arguments on his own behalf but has not responded.  Finding no arguable error that would result in a disposition more favorable to Sosa, we affirm the judgment.

## I.  Factual and Procedural Background

### A.  *Procedural Background*

On February 18, 2025, the Santa Clara County District Attorney's Office filed a second amended felony information, charging Sosa with the following offenses: the

murder of Daniel Victoria-Ruiz (Pen. Code[1], § 187, subd. (a); count 1); hit and run driving resulting in permanent serious injury or death (Veh. Code, § 20001, subd. (a); count 2); gross vehicular manslaughter (§ 191.5, subd. (a); count 3); misdemeanor driving with a restricted license related to a driving under the influence (DUI) offense (Veh. Code, § 14601.2, subd. (b); count 4); misdemeanor DUI with a blood alcohol level of 0.01 percent or higher while on probation for a DUI offense (Veh. Code, § 23154, subd. (a); count 5); and misdemeanor DUI with a blood alcohol level of 0.08 percent or more (Veh. Code, § 23152, subd. (b); count 6). As to counts 1, 2, and 3, the information alleged that Sosa had prior convictions that were numerous or of increasing seriousness (Cal. Rules of Court, rule 4.421(b)(2)); Sosa was on probation, mandatory supervision, postrelease community supervision, or parole when the crime was committed (Cal. Rules of Court, rule 4.421(b)(4)); and Sosa's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory (Cal. Rules of Court, rule 4.421(b)(5)). The information further alleged as to count 3 that Sosa inflicted great bodily injury on the victim within the meaning of sections 667 and 1129.7, and Sosa fled from the scene of the crime after committing the offense within the meaning of Vehicle Code section 20001, subdivision (c). Finally, the information alleged as to count 6 that Sosa committed the offense within 10 years of a prior DUI conviction within the meaning of Vehicle Code section 23540.

A jury trial commenced in January 2025, with opening arguments, evidence and closing arguments presented from February 3, 2025, through February 14, 2025. While the jury was in deliberations, the parties reached a negotiated plea agreement, whereby Sosa agreed to plead no contest to counts 2 through 6, and admit the associated enhancements for those counts, in exchange for a total aggregate sentence of 18 years in prison and dismissal of count 1. Sosa additionally agreed to waive two years of credits

---

[1] Undesignated statutory references are to the Penal Code.

for time previously served in custody against his total commitment time.  Sosa subsequently signed a plea and waiver form setting forth the terms of the negotiated plea agreement, and the trial court accepted his plea and dismissed the jury.

On April 10, 2025, Sosa appeared for sentencing.  The court sentenced Sosa to the agreed-upon term of 18 years in prison, which consisted of the following: (1) the upper term of 10 years for gross vehicular manslaughter (§ 191.5, subd. (a); count 3), with a consecutive term of five years in prison for fleeing from the scene of the crime after committing the offense (Veh. Code, § 20001, subd. (c)); (2) a consecutive term of one year in prison (one-third the midterm of three years) for hit and run driving resulting in permanent serious injury or death (Veh. Code, § 20001, subd. (a); count 2); (3) two consecutive terms of six months in county jail for misdemeanor driving with a restricted license and misdemeanor DUI while on probation (Veh. Code, § § 14601.2, subd. (b) & 23154, subd. (a); counts 4 and 5); and (4) a consecutive term of one year in county jail for misdemeanor DUI with a blood alcohol level of 0.08 or higher (Veh. Code, § 23152, subd. (b); count 6).  The court dismissed count 1 pursuant to the parties' agreement and ordered victim restitution and a $5,000 restitution fine (§ 1202.4, subd. (b)(2)), but waived the remaining fines, including a court operations assessment (§ 1465.8, subd. (a)(1)), and a court facilities assessment (Gov. Code, § 70373).

On May 23, 2025, Sosa filed a notice of appeal but did not seek a certificate of probable cause.

## B.      *Factual Background*

On March 27, 2021, at approximately 1:23 a.m., San Jose Police Department Officer Abrahim Hassan responded to a vehicle collision near Bailey Avenue and Monterey Road in San Jose.  Upon arrival, Hassan observed that one of the vehicles involved, a sedan, was on fire, while the second vehicle, a truck, was smashed up against a tree with an occupant still inside.  After approaching the truck, Hassan observed that the driver's side occupant, later identified as the victim Daniel Victoria-Ruiz, appeared

3

lifeless with significant injuries. There were no occupants in the sedan, but Hassan observed that the front driver's side door was open, suggesting that the driver of the vehicle had opened the door and left on his or her own. A records check of the sedan's license plate revealed that Sosa was the owner.

After searching Sosa's home address in Gilroy, Hassan requested an "emergency ping" on Sosa's phone, which indicated a location within a 1.8-mile radius of the crash site. Hassan also went to Sosa's mother's apartment in San Jose and reviewed her cell phone history, which reflected that Sosa had called and texted her on several occasions the same night. Some time later, Hassan was contacted by one of Sosa's family members, who indicated that Sosa was at his mother's home in San Jose and injured.

Upon making contact with Sosa at approximately 6:22 a.m., Hassan smelled alcohol and observed that Sosa's eyes were slightly red and watery. Sosa admitted to Hassan that his license was currently suspended. Hassan then conducted field sobriety tests (FSTs), and Sosa's performance on the tests reflected that he was intoxicated. Hassan also performed a preliminary alcohol screening (PAS) test, which reflected alcohol levels of 0.127 percent, 0.116 percent, and 0.112 percent. Sosa also admitted to Hassan that he had been drinking alcohol with his cousin in San Jose. Subsequent blood testing revealed that Sosa had a blood alcohol level of 0.115 percent.

The People also presented testimony from other police officers that Sosa had been arrested for DUIs on two prior occasions in 2017 and 2020, and had been given advisements on at least two prior occasions pursuant to *People v. Watson* (1983) 30 Cal.3d 290 (*Watson*) that driving under the influence was dangerous to human life, and if someone was killed as a result of Sosa continuing to drive under the influence, he could be charged with murder.[2]

_____

[2] "Under certain circumstances, malice may be implied when a defendant kills someone while willfully driving under the influence of alcohol, thus subjecting the defendant to a charge of murder. (See *People v. Wolfe* (2018) 20 Cal.App.5th 673, 681

San Jose Police Detective Michael O'Brien, who reviewed surveillance footage taken near the scene of the crash, estimated that Victoria-Ruiz's truck had been traveling approximately 43 miles per hour while Sosa's sedan had been traveling at approximately 65 miles per hour. Based on the tire marks observed at the crash site, O'Brien opined that the sedan rear-ended the truck, causing the truck to detach and rotate into the guardrail on the side of the road, then roll along the top of the guardrail and hit the tree where the truck was ultimately found.

## II. DISCUSSION

Pursuant to *People v. Wende, supra*, 25 Cal.3d 436, we have reviewed the entire record. We find no arguable error that would result in a disposition more favorable to Sosa.

## III. DISPOSITION

The judgment is affirmed.

---

(*Wolfe*).) This is 'colloquially known as a *Watson* murder' after *Watson*, *supra*, 30 Cal.3d 290. (*Wolfe*, *supra*, 20 Cal.App.5th at p. 677.) Among other things, conviction on this basis requires a showing that the defendant had a subjective, actual awareness of the risk presented by his or her conduct. (*Watson*, at pp. 296–297.) Opinions affirming convictions under this principle have relied on a number of factors present in *Watson*, including ' "(1) blood-alcohol level above the .08 percent legal limit; (2) a predrinking intent to drive; (3) knowledge of the hazards of driving while intoxicated; and (4) highly dangerous driving." ' (*Wolfe,* at pp. 682–683.) 'However, "nowhere does the opinion in *Watson* state that all of the factors present in that case are necessary to a finding of second degree murder." ' (*Wolfe*, at p. 683.)" (*People v. Munoz* (2019) 31 Cal.App.5th 143, 153.)

_____
WILSON, J.

WE CONCUR:


_____
GROVER, Acting P. J.



_____
CHUNG, J.*




*The People v. Sosa*
H053373


---

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6 of the California Constitution.