Filed 6/16/22  P. v. Soto CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br>v.<br>ISIDRO PENA SOTO,<br><br>Defendant and Appellant. | A163944<br><br>(Solano County<br>Super. Ct. No. FCR241319) |

In 2007, defendant Isidro Pena Soto drove while under the influence of alcohol and collided head on with another vehicle, killing its driver. A jury convicted Soto of several crimes, including second degree murder. He was sentenced to 19 years to life in prison, and this division affirmed the judgment after modifying it to strike certain lesser included offenses. (*People v. Soto* (Sept. 29, 2009, A123133) [nonpub. opn.] (*Soto I*).)

The Legislature subsequently enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which altered liability for murder under the theories of felony murder and natural and probable consequences. The bill also established a procedure, under newly enacted Penal Code[1] section 1170.95, for eligible defendants to petition for resentencing. In 2021,

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

1

Soto filed a petition for resentencing under section 1170.95 alleging that he was convicted of second degree murder under the natural and probable consequences doctrine and could no longer be convicted of that crime because of Senate Bill No. 1437's changes to the law.

The trial court summarily denied the petition without appointing counsel for Soto. The court concluded that Soto was ineligible for relief because he was convicted of second degree murder based on *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*), which held that a defendant who drives while intoxicated and kills someone may be convicted of second degree implied malice murder. (*Id.* at pp. 300–301.)

On appeal, Soto claims he made a prima facie showing of eligibility for relief under section 1170.95 because the statute "covers a *Watson* implied malice murder." (Boldface omitted.) He argues the trial court therefore prejudicially erred by denying his petition without appointing counsel to represent him. We disagree with these arguments and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

The underlying facts are taken from *Soto I*, *supra*, A123133:

"Kent Boone drove over the crest of an incline on Highway 12 in Solano County around 6:15 a.m. on March 31, 2007, and was met head on by a Ford Expedition driven by [Soto]. Boone died at the scene from blunt force injuries suffered in the collision.

"The accident was witnessed by [A.B.], who testified that he was driving east on Highway 12, a two-lane road with solid double lines in the middle, when he noticed [Soto's] vehicle in his rear view mirror approaching rapidly and swerving back and forth between the lanes. [A.B.] slowed and moved to the shoulder of the road to avoid [Soto], who passed by at a speed [A.B.] estimated to be 85 to 90 miles per hour. As [Soto] went up an

2

incline, he drifted over into the westbound lane and collided with Boone's vehicle, which emerged going in the other direction.

"[Soto] exhibited signs of being under the influence of alcohol, but field sobriety tests could not be administered because his leg was trapped under the dashboard of the Expedition. [Soto] was extricated from the vehicle and flown to a hospital, where a sample of his blood was drawn sometime between 9:27 and 9:55 a.m. that morning. Prosecution analysis of the blood sample found an alcohol content of .10 percent; defense analysis found .09 percent. The prosecution's expert estimated that [Soto] had a blood-alcohol content of .154 at the time of the accident; [Soto's] expert estimated .16.

"[Soto] had completed an 18-month alcohol abuse treatment program three months before the accident. Records showed that he never missed a class in the program. The program counselor . . . testified that the main point of the treatment was to underscore the risks of driving under the influence. [The counselor] said that he told [Soto] 26 times face-to-face and 12 times in classes about the risk to life created by drunk driving, and warned him that killing someone while driving under the influence could constitute murder. [Soto] signed a plea form in one of his prior drunk driving cases in which he acknowledged that 'it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both. If I continue to drive while under the influence of alcohol or drugs, or both, and as a result of that driving, someone is killed, I can be charged with murder.' "

Soto was tried in 2008. On the murder count, the jury was instructed under CALCRIM No. 520 that Soto acted with express malice "if he unlawfully intended to kill" and with implied malice if "1. He intentionally committed an act; [¶] 2. The natural consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard for human life." The jury found him guilty of second degree murder, gross vehicular manslaughter while intoxicated, two lesser included offenses of

gross vehicular manslaughter while intoxicated, and two drug-related offenses.[2]  It also found true that Soto had three prior convictions for driving with a blood-alcohol content of .08 percent or more.[3]

The trial court sentenced Soto to 19 years to life in prison, composed of a term of 15 years to life for murder and four years for transportation of methamphetamine.  Terms on the remaining counts were imposed and stayed.  On appeal, this division struck the lesser included offenses of gross vehicular manslaughter while intoxicated and their accompanying enhancements and affirmed the judgment as modified.  (*Soto I, supra,* A123133.)

In March 2021, Soto filed a petition for relief under section 1170.95, averring that he was convicted of second degree murder under the natural and probable consequences doctrine and could no longer be convicted of that crime based on changes to the law made by Senate Bill No. 1437.  Later that month, the trial court summarily denied the petition.  Soto did not appeal from this order.  Instead, in October 2021, he filed another petition for relief under section 1170.95, in which he made the same claim of entitlement to relief and sought appointment of counsel.  The same day, the court again summarily denied the petition, explaining, "The Defendant was convicted of

---

[2] The convictions were under sections 187, subdivision (a) (murder), and 191.5, subdivision (a) (gross vehicular manslaughter while intoxicated), Health and Safety Code sections 11378 (possession for sale of methamphetamine) and 11379, subdivision (a) (transportation of methamphetamine), and Vehicle Code section 23153, subdivisions (a) and (b) (lesser included offenses of gross vehicular manslaughter while intoxicated).

[3] The prior-conviction allegations were found true under Vehicle Code sections 23540 and 23546, based on 2005 misdemeanor convictions under Vehicle Code section 23142, subdivision (b).

4

2nd degree Murder based on *Watson* prior driving under the influence, under implied malice."[4]  This appeal followed.

## II.
### DISCUSSION

### A.    *Senate Bill No. 1437 and Section 1170.95*

" 'Effective January 1, 2019, Senate Bill [No.] 1437 amended murder liability under the felony-murder and natural and probable consequences theories.  The bill redefined malice under section 188 to require that the principal acted with malice aforethought.  Now, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)'  [Citation.]  The bill also amended section 189 to provide that a defendant who was not the actual killer and did not have an intent to kill is not liable for felony murder unless he or she 'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2,' or the victim was a peace officer performing his or her duties.  (§ 189, subds. (e) & (f).)"  (*People v. Daniel* (2020) 57 Cal.App.5th 666, 672.)

Senate Bill No. 1437 also enacted section 1170.95, which provides a mechanism for seeking resentencing under the new law.  The statute authorizes "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter [to] file a petition with the court that sentenced the

---

[4] The trial court did not deny the second petition on the basis that it was duplicative of the first petition, and the Attorney General does not argue that Soto waived his claims by failing to appeal from the denial of the first petition.  Therefore, we will assume Soto's claims are preserved.

petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a).)

" '[T]he defendant initiates the process by filing a petition in the sentencing court that must include three pieces of information. (§ 1170.95, subd. (b).)" (*People v. Daniel, supra*, 57 Cal.App.5th at p. 672.) First, the petition must include "[a] declaration by the petitioner that the petitioner is eligible for relief under this section, based on all the requirements of subdivision (a)." (§ 1170.95, subd. (b)(1)(A).) Those requirements are that (1) "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine"; (2) "[t]he petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted of murder or attempted murder"; and (3) "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).) Second, the petition must include "[t]he superior court case number and year of the petitioner's conviction." (§ 1170.95, subd. (b)(1)(B).) And finally, the petition must state "[w]hether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1)(C).)

Effective January 1, 2022, "[u]pon receiving a petition in which the information required by this subdivision is set forth or a petition where any missing information can readily be ascertained by the [trial] court, if the

6

petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1170.95, subd. (b)(3); Stats. 2021, ch. 551, § 2.) This provision codifies the Supreme Court's decision in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), which held that "petitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition" for relief. (*Id.* at p. 957; Stats. 2021, ch. 551, § 1.)

Finally, section 1170.95, subdivision (c), addresses the procedure for determining whether an order to show cause should issue. That provision states that "[a]fter the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." If an order to show cause issues, the court "hold[s] a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts," unless the parties "waive a resentencing hearing and stipulate that the petitioner is eligible to have the . . . conviction vacated and to be resentenced." (§ 1170.95, subd. (d)(1)–(2).)

B.    *Soto Is Ineligible for Relief Under Section 1170.95 as a Matter of Law.*

Soto claims the trial court erred by denying his petition, because a defendant convicted of *Watson* murder is eligible for resentencing under section 1170.95. He is incorrect.

We begin by reviewing the law of second degree murder. "Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) "For purposes of Section 187, malice may be express or

7

implied." (§ 188, subd. (a).) "Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature," and it is "implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188, subd. (a)(1)–(2).) "Express malice is an intent to kill," but implied malice does not require such intent. (*People v. Gonzalez* (2012) 54 Cal.4th 643, 653.) Rather, "[m]alice is implied when a person willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses." (*Ibid.*) All murders committed with implied malice are of the second degree. (*Ibid.*)

*Watson* held that vehicular homicide may be charged as second degree murder "if the facts surrounding the offense support a finding of 'implied malice.'" (*Watson*, *supra*, 30 Cal.3d at p. 294.) The Supreme Court explained that in contrast to the mind state required for gross vehicular manslaughter, "[i]mplied malice contemplates a subjective awareness of a higher degree of risk than does gross negligence, and involves an element of wantonness which is absent in gross negligence." (*Id.* at p. 296.) And while gross negligence is evaluated objectively, based on whether a reasonable person would have appreciated the risk, "a finding of implied malice depends upon a determination that the defendant actually appreciated the risk involved, i.e., a subjective standard." (*Id.* at pp. 296–297, italics omitted.)

Senate Bill No. 1437 abolished the natural and probable consequences doctrine, but it did not affect the concept of implied malice. As we have explained,

> "[b]efore Senate Bill No. 1437, 'the natural and probable consequences doctrine was an exception to the actual malice requirement'—i.e., the requirement of either express or implied

8

malice. [Citations.] The name of the doctrine is confusing, since implied malice also incorporates the idea of 'natural and probable consequences,' but the two concepts are distinct. Whereas implied malice is based on 'the "natural and probable consequences" of a defendant's *own* act,' the natural and probable consequences doctrine was 'a theory of vicarious liability under which "[a]n aider and abettor [was] guilty not only of the intended, or target, crime but also of any other crime a principal in the target crime actually commit[ted] (the nontarget crime)" ' —including murder—' "that [was] a natural and probable consequence of the target crime." ' [Citation.] 'Because a nontarget murder " '[was] unintended, the mens rea of the aider and abettor with respect to that offense [was] irrelevant and culpability [was] imposed simply because a reasonable person could have foreseen the commission of the [murder]. . . .' " '

"Under section 188 as amended by Senate Bill No. 1437, 'to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3).) Although the legislation thus 'abolished the natural and probable consequences doctrine' as a theory of vicarious liability, 'it maintained the viability of murder convictions based on implied malice, and the definition of implied malice remains unchanged.' [Citation.] In other words, a person may still be convicted of second degree murder, either as a principal or an aider and abettor, 'if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.' "

(*People v. Rivera* (2021) 62 Cal.App.5th 217, 231–232, fn. omitted.)

In *People v. Roldan* (2020) 56 Cal.App.5th 997 (*Roldan*), the Second District Court of Appeal applied these concepts to hold that a person convicted of *Watson* murder is ineligible for relief under section 1170.95. (*Roldan*, at p. 1004.) *Roldan* explained that under *Watson*, "[m]alice may be implied when a person willfully drives under the influence of alcohol." (*Ibid.*) Thus, a defendant convicted of *Watson* murder is "convicted under a theory of actual implied malice, not malice imputed under the natural and probable

9

consequences doctrine." (*Ibid.*) Although "the doctrine of implied malice has a 'natural and probable consequences' element," the defendant must "actually appreciate that death is the natural and probable consequence of his or her actions, and further requires that the [defendant] consciously disregard that danger." (*Id.* at pp. 1004–1005.) Thus, unlike the natural and probable consequences doctrine eliminated by Senate Bill No. 1437, implied malice rests on the killer's own mens rea. (See *Roldan*, at pp. 1004–1005.)

Soto contends that "*Roldan* is inapposite" because it was decided before the current version of section 1170.95 took effect. When *Roldan* was decided, the statute provided that "[a] person convicted of felony murder or murder under a natural and probable consequences theory" could petition for resentencing (former § 1170.95, subd. (a)), and the corresponding condition of relief required that "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine" (former § 1170.95, subd. (a)(1)). Now, as a result of Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill No. 775), the provisions quoted above pertain to not only "felony murder or murder under the natural and probable consequences doctrine" but also any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1170.95, subd. (a); Stats. 2021, ch. 551, § 2.) In other words, section 1170.95 now echoes section 188's requirement that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Even assuming without deciding that Senate Bill No. 775 substantively expanded the classifications of those who are entitled to relief under section 1170.95, Soto would not be included. According to him, implied

10

malice qualifies as a "theory under which malice is imputed to a person based solely on that person's participation in a crime," because "implied malice" is equivalent to "imputed malice." But implied malice is not the same as imputed malice. As explained above, implied malice is based on a defendant's own mens rea, whereas malice "imputed to a person based solely on his or her participation in a crime" is based on vicarious liability for a killing committed by another person. Soto claims that "implied malice . . . was imputed to [him] because he participated in a crime," but that is simply false. There were no other participants in Boone's murder, and the jury was not told it could find Soto acted with implied malice based on his participation in some other crime. Rather, the finding of implied malice was based on ample evidence that Soto was actually aware of and consciously disregarded the grave risk to life he took by driving drunk. Thus, malice was not imputed to him within the meaning of section 188, and he is ineligible for relief under section 1170.95 as a matter of law. (See *Roldan*, *supra*, 56 Cal.App.5th at pp. 1004–1005.)

      C.     *The Failure To Appoint Counsel for Soto Was Harmless.*

Soto also claims the trial court erred by failing to appoint counsel for him before denying the petition, requiring a remand to appoint counsel and permit briefing. We are not persuaded.

As mentioned above, a few months before the trial court ruled, the Supreme Court held that "petitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition" for resentencing under section 1170.95. (*Lewis*, *supra*, 11 Cal.5th at p. 957.) A petition is facially sufficient if it meets the requirements under section 1170.95, subdivision (b). (See *Lewis*, at p. 957; § 1170.95, subds. (b), (c).) It is uncontested that Soto's petition was facially sufficient, and he requested that counsel be appointed.

11

Therefore, under *Lewis*, the court should have appointed counsel and permitted briefing before denying the petition.

Nevertheless, the error was harmless because it is not " ' "reasonably probable that if [Soto] had been afforded assistance of counsel his . . . petition would not have been summarily denied without an evidentiary hearing." ' " (*Lewis, supra,* 11 Cal.5th at p. 974.) Soto states that "[h]ad [he] been allowed to brief the issues and submit additional evidence, he may very well have established that an order to show cause should have issued." But no briefing or evidence could change the fact that, as explained above, he is ineligible for relief under section 1170.95 as a matter of law.

## III.
### DISPOSITION

The October 8, 2021 order denying Soto's petition under section 1170.95 is affirmed.

        _____

        Humes, P.J.

WE CONCUR:

_____

Margulies, J.

_____

Wiss, J. *

    *Judge of the Superior Court of the City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*People v. Soto* A163944

13