Filed 4/7/23

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E079368 |
| v. | (Super.Ct.No. RIF106245) |
| VONDETRICK CARR, | OPINION |
|     Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General of California, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, and A. Natasha Cortina and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

Petitioner Vondetrick Carr drove drunk with four children in his car.  He ran three red lights; the third time, while going 70 miles an hour, he hit a pickup truck.  One of the

1

children was killed. As a result, in 2004, petitioner was convicted of, among other crimes, second degree murder.

In 2021, petitioner filed a petition to vacate the murder conviction under Penal Code section 1172.6 (section 1172.6).[1] The trial court denied the petition because petitioner was not convicted either on a natural and probable consequences theory or under the felony murder rule.

Petitioner appeals. He contends that the theory under which he was convicted — causing death unintentionally but with implied malice while driving drunk (*People v. Watson* (1981) 30 Cal.3d 290 (*Watson*)) — is an "other theory under which malice is imputed to a person based solely on that person's participation in a crime" within the meaning of section 1172.6.

Not so. Implied malice is not imputed malice. It requires the that perpetrator actually and personally harbor malice. *Watson* stands for the proposition that implied malice may be inferred from a defendant's conduct before, during, and after driving drunk — not imputed from the bare fact of driving drunk. Petitioner's contrary argument is an artificial concoction that takes the words "natural consequences" and/or "natural and

---

[1] The petition was actually filed under Penal Code former section 1170.95. (Stats. 2018, ch. 1015, § 4, amended by Stats. 2021, ch. 551, § 2.) Effective June 30, 2022, however, former section 1170.95 was renumbered as section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We will use section 1172.6, somewhat anachronistically, to refer to whichever one of the two statutes was in effect at the relevant time.

probable consequences" out of their proper legal contexts and dumps them all together into a confused semantic stew.

I

STATEMENT OF FACTS

The following facts are taken from our opinion in petitioner's direct appeal. (*People v. Carr* (2006, E037157) [nonpub. opn.].)[2]

In 1998, petitioner was arrested for speeding and driving recklessly in a school zone when children were present.

In 1999, while driving under the influence of alcohol, petitioner hit a fence and a gated access control box. A police officer then saw him driving without headlights at night, driving 45 miles an hour in a residential zone, and running a stop sign; the officer therefore stopped and arrested him.

In September 2002, petitioner hosted a birthday party for his son A.C., age 4, at a park in Lake Elsinore. He drove two of the guests — D.Y., age 12, and K.R., age 13 — to the park. During the party, petitioner was drinking alcohol.

---

[2] Section 1172.6 allows the trial court to consider a prior appellate opinion as evidence of the procedural history of the case, but not as evidence of the facts in the case. (§ 1172.6, subd. (d)(3); *People v. Clements* (2022) 75 Cal.App.5th 276, 292.) Nevertheless, petitioner's own statement of facts is expressly based on our prior opinion. We deem this a forfeiture of any objection to our considering facts stated in the prior opinion.

After the party, petitioner started to drive D.Y. and K.R. home. His sons A.C. and V.C. were also in the car. None of the children were wearing seat belts. An adult friend was in the front passenger seat.

After exiting the parking lot, petitioner drove on surface streets at 70 to 100 miles an hour. At times, he crossed the double yellow line and drove on the wrong side of the street. The adult friend repeatedly told him to slow down because there were children in the car.

Petitioner ran a red light. As he approached a second red light, he flashed his headlights, then ran it, too, narrowly missing another car. When he ran a third red light, going 70 miles an hour, he hit a pickup truck.

K.R. was killed. At petitioner's first trial, but not his second (in which he was convicted of murder), it was shown that all of the other occupants of petitioner's car, including petitioner, had serious injuries. Two occupants of the pickup were also injured.

Petitioner admitted having drunk a six-pack of beer. A blood draw three hours after the crash indicated that his blood alcohol level at the time of the crash was 0.11 percent.

II

STATEMENT OF THE CASE

Petitioner pleaded guilty to driving on a suspended license, with three prior convictions within five years. (Veh. Code, § 14601.1, subds. (a), (b)(2).)

4

After a first jury trial, in May 2004, petitioner was additionally found guilty of three counts of felony child endangerment (Pen. Code, § 273a, subd. (a)), two with great bodily injury enhancements (Pen. Code, § 12022.7, subd. (a)); and of driving under the influence and causing injury (Veh. Code, § 23153, subd. (a)), with a great bodily injury enhancement and an enhancement for causing bodily injury to more than one victim (Veh. Code, § 23558). The jury hung on a charge of murder. (Pen. Code, § 187, subd. (a).)

After a second jury trial, in November 2004, petitioner was found guilty of second degree murder.

In a bifurcated proceeding, after petitioner waived a jury, the trial court found true four prior serious felony conviction allegations (Pen. Code, § 667, subd. (b)) and one strike prior allegation (Pen. Code, §§ 667, subds. (b)-(i), 1170.12).

Petitioner was sentenced to a total of 51 years, 4 months to life in prison.

In 2021, petitioner filed a document entitled "Memorandum of Point[s] and Authorities in Support of Penal Code Section [1172.6] Petition." (Capitalization altered.) The trial court treated this as a petition to vacate his murder conviction under section 1172.6. It appointed counsel for petitioner.

In 2022, at a status conference, the prosecutor represented: "I examined the case in imaging. There's no natural and probable consequences instructions. There's no aiding and abetting instructions. There's no felony murder instructions. It was a DUI

5

with a death, and the jury found the defendant guilty on that theory." Defense counsel said, "I . . . agree with his representations regarding jury instructions."

The trial court summarily denied the petition, because petitioner was the "actual slayer" and the jury had not been instructed on either a natural and probable consequences or felony murder theory.

III

DISCUSSION

Petitioner contends that the trial court erred by finding him ineligible for relief.

Second degree murder is defined as requiring either express or implied malice. (Pen. Code, §§ 187, subd. (a), 188, subd. (a).) Express malice is intent to kill. (Pen. Code, § 188, subd. (a)(1).) "'[I]mplied malice has both a physical and a mental component, the physical component being the performance "'of an act, the natural consequences of which are dangerous to life,'" and the mental component being the requirement that the defendant "'knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life.'"' [Citation.]" (*People v. Taylor* (2004) 32 Cal.4th 863, 868.)

Nevertheless, when petitioner was tried, there were at least two ways a person could be found guilty of murder, even though he or she did not personally harbor malice.

First, "'"[u]nder the felony-murder doctrine, when the defendant or an accomplice kill[ed] someone during the commission, or attempted commission, of an inherently dangerous felony, the defendant [wa]s liable for either first or second degree murder,

6

depending on the felony committed.""'" (*People v. Powell* (2018) 5 Cal.5th 921, 942.) ""'The felony-murder rule impute[d] the requisite malice for a murder conviction to those who commit a homicide during the perpetration of a felony inherently dangerous to human life.'" [Citation.]" (*People v. Baker* (2021) 10 Cal.5th 1044, 1105.)

Second, under the natural and probable consequences doctrine, "[a]n aider and abettor [wa]s guilty not only of the intended, or target, crime but also of any other crime a principal in the target crime actually commits (the nontarget crime) that is a natural and probable consequence of the target crime. [Citations.] 'Thus, for example, if a person aid[ed] and abet[ted] only an intended assault, but a murder result[ed], that person [could] be guilty of that murder, even if unintended, if it [wa]s a natural and probable consequence of the intended assault.' [Citation.]" (*People v. Smith* (2014) 60 Cal.4th 603, 611.) In sum, "malice could be imputed to an aider and abettor under the natural and probable consequences doctrine." (*People v. Roldan* (2020) 56 Cal.App.5th 997, 1002, review dismissed and ordered partially noncitable on other grounds, Dec. 22, 2021, S266031.)

Effective in 2019, however, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) abrogated these two doctrines as applied to murder.

It added Penal Code section 189, subdivision (e), which now provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:

"(1) The person was the actual killer.

7

"(2)  The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.

"(3)  The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ."

It also added Penal Code section 188, subdivision (a)(3), which now provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."

Finally, it added section 1172.6.  As originally enacted, section 1172.6 provided: "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition . . . to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ."  (Pen. Code, former § 1170.95, subd. (a), Stats. 2018, ch. 1015, § 4.)

Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) amended section 1172.6 so that it now provides:  "A person convicted of felony murder or murder under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime* . . . may file a petition . . . to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts . . . ."  (§ 1172.6, subd. (a), italics added.)

8

A petition in good form must be granted, unless the trial court finds, beyond a reasonable doubt, that the petitioner is guilty of murder even under current law. (§ 1172.6, subds. (a)(3), (d)(3).)

Here, the prosecutor and defense counsel stipulated that petitioner was not convicted on either a felony murder or a natural and probable consequences theory. Petitioner argues, however, that when a person is convicted of second degree murder on a theory of implied malice while driving drunk, malice is "imputed to a person based solely on his or her participation in a crime," within the meaning of Penal Code section 188, subdivision (a)(3). Thus, this is an "other theory under which malice is imputed to a person based solely on that person's participation in a crime," within the meaning of section 1172.6, subdivision (a).

Under *Watson*, implied malice can be inferred, in an appropriate case, when the defendant unintentionally killed someone while driving while intoxicated. (*Watson*, *supra*, 30 Cal.3d at pp. 300-301.) "'One who willfully consumes alcoholic beverages to the point of intoxication, knowing that he thereafter must operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a vehicle capable of great force and speed, reasonably may be held to exhibit a conscious disregard of the safety of others.'" (*Ibid.*) However, driving while intoxicated, standing alone, is not sufficient to prove implied malice. "[A] finding of implied malice [requires evidence] that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard. [Citation.]" (*Id.* at pp. 296-297.)

9

"Implied malice murder involving drunk driving is now 'colloquially known as a *Watson* murder.' [Citation.]" (*People v. Alvarez* (2019) 32 Cal.App.5th 781, 785, fn. 2.)

Petitioner asserts that "A *Watson* murder rests upon and is a specific application of the natural and probable consequences doctrine. [Citation.]" No. The natural and probable consequences doctrine is a theory of liability for aiding and abetting. It made an aider and abettor guilty of a murder committed by the perpetrator, even if the aider and abettor lacked malice, as long as (1) the aider and abettor intended to commit the target crime, and (2) murder was a natural and probable consequence of the target crime. A *Watson* murder, by contrast, does not normally involve aiding and abetting. In fact, it is hard to imagine how it could. Rather, *Watson* requires that the defendant — the person who kills unintentionally while driving drunk — act with implied malice.

Petitioner notes that implied malice is defined, in part, in terms of an act, the natural consequences of which are dangerous to life. But while the words "natural" and "consequences" overlap, the rest of the two formulations are completely different. "[T]he use of the term 'natural consequences' in the . . . definition of implied malice does not import into the crime of murder the caselaw relating to the distinct 'natural and probable consequences' doctrine developed in the context of aiding and abetting liability." (*People v. Martinez* (2007) 154 Cal.App.4th 314, 334.)

Thus, as petitioner appropriately concedes, cases have held that "Senate Bill [No.] 1437 did nothing to remove implied malice as a basis for a second degree murder conviction." (*People v. Roldan*, *supra*, 56 Cal.App.5th at p. 1005.) Indeed, this court has

10

said, "Though [Senate Bill No. 1437] abolished the natural and probable consequences doctrine, it maintained the viability of murder convictions based on implied malice, and the definition of implied malice remains unchanged. [Citation.]" (*People v. Clements*, *supra*, 75 Cal.App.5th at p. 298.)

Petitioner nevertheless maintains that these cases are no longer good law in light of the 2022 addition of the words "or other theory under which malice is imputed to a person based solely on that person's participation in a crime" to section 1172.6. However, a *Watson* theory does not involve the *imputation* of malice. It requires proof — in addition to the mere fact that the defendant killed someone while driving while intoxicated — that the defendant *personally harbored* implied malice. (*Watson*, *supra*, 30 Cal.3d at pp. 296-297.)

In petitioner's case, the prosecutor argued that petitioner was guilty of murder based on implied malice. "Now, he has to have a certain mental state; right? He has to know that those acts are dangerous." "The mental aspect is, it involves an act that was deliberately performed by a person who knows his conduct endangers life and says, 'You know what? I don't care. I'm going to do it anyway.'"

He noted that petitioner drank despite knowing that he had to drive K.R. and D.Y. home. He let the children ride without seat belts. He drove a total of 2.3 miles in an obviously dangerous manner, including going up to 100 miles an hour, running red lights, and driving on the wrong side of the road. His adult friend repeatedly told him to slow down.

11

At one red light, he flashed his headlights.  As the prosecutor argued, "Why do you flash your lights at someone?  Because you know what you're about to do is a dangerous thing as a warning.  Defendant was aware of the risk and the danger to human life."

The prosecutor also noted that in 1999, petitioner had driven recklessly while drunk, causing property damage.

All of this argument, and all of the evidence cited in it, went to whether petitioner personally harbored implied malice.  The prosecutor did not claim that implied malice could be imputed from the mere fact that petitioner was driving drunk.  Quite the contrary, he noted that he had to prove that petitioner was subjectively aware of the danger to human life, and he cited an abundance of evidence tending to prove that fact.

Petitioner asserts that:  "The jury instructions in this case, specifically, CALJIC Nos. 3.40, 8.11, 8.31 and 8.46, permitted the jury to find that the 'natural and probable consequences' of his actions in driving while intoxicated were 'dangerous to human life,' and that 'a natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.'"

Again, no.  Petitioner is mashing together isolated phrases from instructions on entirely different points.

CALJIC No. 8.11 instructed that implied malice requires that "(1) the killing resulted from an intentional act, [and] (2) the natural consequences of the act are dangerous to human life . . . ."  Next, however, it instructed that implied malice also

12

requires that "(3) the act was deliberately performed with knowledge of the danger to and with conscious disregard for human life." In other words, it instructed that implied malice has both a physical component (an intentional act the natural consequences of which are dangerous to human life) and a mental component (knowledge of the danger to and conscious disregard for human life). It did not allow implied malice to be imputed solely from the natural consequences of the act.[3]

CALJIC No. 8.46 was not related to implied malice. Rather, it defined the term "without due caution and circumspection," as used in CALJIC No. 8.45, regarding the lesser included offense of involuntary manslaughter. Among other things, it explained that for the term "without due caution and circumspection" to apply, "[i]t must also appear that the death [*sic*] to human life was not the result of inattention, mistake of judgment, or misadventure, but the natural and probable result of an aggravated and reckless, grossly negligent act." It then stated: "A natural result is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened. 'Probable' means likely to happen."[4]

As this instruction did not relate to implied malice or second degree murder at all, there is no reasonable probability that the jury combined it with CALJIC No. 8.11 (and/or CALJIC No. 8.31) in the manner that petitioner suggests.

---

[3] CALJIC No. 8.31 was essentially identical, except that it recapitulated the elements of implied malice as elements of second degree murder.

[4] Although petitioner purports to quote this instruction, he actually only paraphrases it.

13

Finally, CALJIC No. 3.40 defined causation, in part, as requiring that death be "a direct, natural and probable consequence of the [defendant's] act or omission." Again, there was no reasonable probability that the jury would treat this as somehow allowing it to impute malice to petitioner.

In closing, petitioner argues that, by enacting section 1172.6 as it now stands, the Legislature somehow embraced the view of the dissenting justices in *Watson* that an unintentional killing while driving drunk should be no more than vehicular manslaughter. However, that argument is not tethered to any particular language in section 1172.6.

We therefore conclude that the trial court correctly ruled that petitioner is not eligible for relief under section 1172.6.

## IV

## DISPOSITION

The order appealed from is affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ _____
P. J.


We concur:

McKINSTER _____
J.

CODRINGTON _____
J.

14